[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 3 
Plaintiffs Dr. Donald Stewart and his wholly-owned professional corporation Radiology Associates, P.C., appeal the Rule 54(b), Ala. R. Civ. P., partial summary judgment entered in favor of defendants Dr. Stephen K. Brinley, his wholly-owned professional corporation Quad-Cities Diagnostic Imaging, P.C., and his partly-owned professional corporation Florence MRI Diagnostic Center, P.C., on the plaintiffs' breach of contract and fraud claims. The defendants-appellees won their summary judgment on the theory that the plaintiffs-appellants' *Page 4 
participation in prior multi-party litigation barred them, under the doctrines of res judicata and collateral estoppel, from suing the defendants-appellees in the current litigation. We affirm in part, reverse in part, and remand because, at no time during the pleading stage of the prior litigation, were the current plaintiffs-appellants or their privies opposed to any of the current defendants-appellees or their privies except Florence MRI.
 Procedural Facts
On July 5, 2001 in the Lauderdale County Circuit Court, Stewart and his P.C. Radiology Associates sued Brinley, his P.C. Quad-Cities, and Florence MRI for breach of contract and fraud relating to a July 1, 1991 general partnership agreement entered by three professional corporations wholly owned by Stewart, Brinley, and Dr. Donald L. Johnson respectively to form the Lauderdale Radiology Group. Specifically, the plaintiffs alleged, in pertinent part:
 "14. Dr. Donald Johnson, in conjunction with Dr. Brinley, and their respective professional corporations, which comprised two-thirds of the Lauderdale Radiology Group partnership, arbitrarily decided, conspired, and colluded with one another to set the professional component reimbursement rate, on at least two occasions, to a lower amount than was required by paragraph 7.10 of the Partnership Agreement.
 "15. Dr. Johnson and Dr. Brinley arbitrarily set the professional component reimbursement rate that Florence MRI was to pay Lauderdale Radiology at $125 per reading, and thereafter said professional component reimbursement rate was again lowered to $100. As a result thereof, Dr. Stewart and his professional corporation, Radiology Associates, P.C., have been caused to lose substantial income."
All three defendants moved to dismiss the complaint on the ground that the doctrines of res judicata and collateral estoppel barred the plaintiffs' claims. The defendants submitted evidentiary materials in support of their motions to dismiss. On October 16, 2001, in an order, the trial court told that parties that the court intended to treat the motions to dismiss as motions for summary judgment and scheduled a hearing on the motions for November 14, 2001. On November 13, 2001, the plaintiffs opposed the summary judgment motions.
On August 29, 2002, the defendants submitted additional evidentiary materials supporting their summary judgment motions. On November 12, 2002, the plaintiffs amended their complaint to assert a claim for unjust enrichment. On January 24, 2003, the trial court entered summary judgment in favor of the defendants on the plaintiffs' claims for breach of contract and fraud, but not on the claim for unjust enrichment. The trial court made the summary judgment final and appealable pursuant to Rule 54(b), Ala. R. Civ. P. Only the Rule 54(b) partial summary judgment in favor of the defendants on the plaintiffs' claims for breach of contract and fraud has been properly appealed to us.
 Substantive Facts
Lauderdale Radiology Group was a general partnership "comprised of Florence Radiology Associates, P.C., Quad-Cities Diagnostic Imaging, P.C., and Radiology Associates, P.C." Florence Radiology Associates, P.C., was a professional corporation formed and owned by Johnson. Quad-Cities Diagnostic Imaging, P.C., was a professional corporation formed and owned by Brinley. Radiology Associates, P.C., was a professional corporation formed and owned by Stewart. Florence MRI Diagnostic, P.C., was a professional corporation formed and owned by Brinley *Page 5 
and Johnson. Surveillance Technologies, Inc., was a corporation formed and owned by Charles E. Fredrick.
On October 28, 1997, in the Jefferson County Circuit Court, Stewart, his wife, and Brinley, all represented by the same counsel, sued Johnson, his P.C. Florence Radiology Associates, Surveillance Technologies, Fredrick, and David L. Bosham, an independent investigator, for invasion of privacy, outrageous conduct, and injunctive relief.
On October 14, 1998, defendants Johnson and his P.C. Florence Radiology Associates filed a counterclaim, and Florence MRI (Brinley and Johnson's P.C.) and Lauderdale Radiology Group (the general partnership of Johnson's, Brinley's, and Stewart's respective P.C.'s), all represented by Johnson's counsel, called themselves "counterclaimants" also, entered the litigation, and asserted claims, against the Stewarts, Stewart's P.C. Radiology Associates, Brinley, and his P.C. Quad-Cities for breach of fiduciary duty, breach of the 1991 Lauderdale Radiology Group general partnership agreement, defamation, and invasion of privacy. (These counterclaims and allied claims by new litigants will, for convenience, be called "the first counterclaims" even though some are not really counterclaims). The gravamen of the first counterclaims was that Stewart and Brinley breached duties owed under the 1991 Lauderdale Radiology Group general partnership agreement and that their breach caused damage to the defendants-counterclaimants. Johnson, individually, counterclaimed against Stewart, individually, for assault and battery. On November 16, 1998, the Stewarts and Brinley, represented by the same counsel, moved to dismiss the first counterclaims. On February 8, 1999, the trial court denied the motion to dismiss.
On May 6, 1999, Stewart, as an individual, as a shareholder in his P.C. Radiology Associates, and as a "partner" (actually his P.C. Radiology Associates, not he himself, was the partner) in Lauderdale Radiology Group, and Radiology Associates itself, all represented by Brinley and Stewart's counsel, amended their claims against Johnson to include a claim for fraudulent suppression and a claim for conversion of funds belonging to the general partnership Lauderdale Radiology Group.
On May 12, 1999, Stewart and his P.C. Radiology Associates, represented by Brinley and Stewart's counsel, amended their claims to allege that the defendants-counterclaimants, represented by Johnson's counsel, had breached paragraphs 7.4, 12, and 15 of the 1991 Lauderdale Radiology Group general partnership agreement. Paragraph 7.4 of the partnership agreement reads, in pertinent part: "No Partner shall do any act detrimental to the best interest of the Partnership which would make it impossible to carry on the ordinary business of the Partnership." Paragraph 12 of the partnership agreement identified the events that would precipitate termination of the partnership. Paragraph 15 identified the manner of dissolution and liquidation of the partnership. Stewart and his P.C. Radiology Associates, represented by Brinley and Stewart's counsel, specifically alleged that the defendants-counterclaimants, represented by Johnson's counsel, had breached the 1991 Lauderdale Radiology Group general partnership agreement and their fiduciary duties owed under that agreement by, among other ways, attempting to circumvent the "buy-out" provisions of the partnership agreement, withdrawing $2,500 of funds belonging to Lauderdale Radiology Group for Johnson's personal use, and wrongfully attempting to dissolve Lauderdale Radiology Group. *Page 6 
On or about May 13, 1999, the defendants-counterclaimants, represented by Johnson's counsel, amended their counterclaims to allege that the plaintiffs, represented by Brinley and Stewart's counsel, had converted $400,000 belonging to the general partnership Lauderdale Radiology Group, had breached their fiduciary duties to the Lauderdale Radiology Group by failing and refusing to fulfill their obligations under the 1991 Lauderdale Radiology Group general partnership agreement to perform certain services to patients of Florence MRI (Johnson and Brinley's P.C.) and the general partnership Lauderdale Radiology Group, and had taken concerted action to divert business from Johnson and to harm Lauderdale Radiology Group and Florence MRI. Johnson, individually, asserted an invasion of privacy claim against the plaintiffs. Johnson, individually, asserted a claim for assault and battery against Stewart, individually. The plaintiffs, represented by Brinley and Stewart's counsel, denied the allegations of the amended counterclaims.
Thereafter, the defendants-counterclaimants, represented by Johnson's counsel, moved for a summary judgment and submitted a narrative statement of the undisputed facts. On October 2, 2000, the plaintiffs, represented by Brinley and Stewart's counsel, filed a statement in opposition to the narrative statement of undisputed facts filed by the defendants-counterclaimants, represented by Johnson's counsel. The statement of the plaintiffs, represented by Brinley and Stewart's counsel, said that the defendants-counterclaimants, represented by Johnson's counsel, had breached paragraph 7.4 of the 1991 Lauderdale Radiology Group general partnership agreement by paying Stewart's P.C. Radiology Associates less the full value of its share in the Lauderdale Radiology Group when the defendants-counterclaimants bought-out that partnership interest in Lauderdale Radiology Group.
Brinley settled his claims against Johnson and his P.C. Florence Radiology Associates. The defendants-counterclaimants settled their counterclaims against Brinley and his P.C. Quad-Cities.
On February 14, 2001, plaintiffs Stewart, Stewart's wife, and Radiology Associates, represented by Brinley and Stewart's counsel, moved for leave to amend their complaint to allege a breach of paragraph 7.10 of the 1991 Lauderdale Radiology Group general partnership agreement by the defendants, and to allege fraud, collusion, and conspiracy among Johnson, his P.C. Florence Radiology Associates, Brinley, and his P.C. Quad-Cities. Specifically, the plaintiffs, represented by Brinley and Stewart's counsel, alleged, in pertinent part:
 "Donald Johnson, as managing partner of Lauderdale Radiology Group, in conjunction with Steve Brinley, and their respective professional corporations which comprise two-thirds of the Lauderdale Radiology Group partnership, arbitrarily decided, conspired, and colluded with one another to arbitrarily set the professional component reimbursement rate, on a[t] least two occasions, to a lower amount than was required by Paragraph 7.10 of the Lauderdale Radiology Group General Partnership Agreement. That General Partnership Agreement provided:
 "`7.10: The Partnership will enter into contracts with Florence M.R.I. Diagnostic Imaging, P.C. (hereinafter "Florence M.R.I.") for the performance of all radiological services needed by Florence M.R.I. The compensation to be paid to the Partnership shall be equal to 80% of the Blue Cross Blue Shield professional component reimbursement *Page 7 rate on January 1 of each year and shall be adjusted annually.'
 "Plaintiffs allege that Dr. Johnson, with the consent and approval of Dr. Brinley, arbitrarily set the professional component reimbursement rate that Florence M.R.I. was to pay Lauderdale Radiology Group at $125.00 per reading, and thereafter lowered said professional component rate to $100.00. As a result thereof, the Plaintiff, Donald Stewart, and his professional corporation, Radiology Associates, P.C., have been caused to lose substantial income." (Boldface type in complaint.)
The proposed amendment did not seek to add either Brinley or his P.C. Quad-Cities as a party defendant. Thereafter, on April 4, 2001, to effectuate the settlement of the claims by plaintiff Brinley against the defendants and the counterclaims by the defendants-counterclaimants against Brinley and his P.C. Quad-Cities, the trial court entered an order dismissing those settled claims.
At the beginning of the trial, on April 9, 2001, the trial court disallowed the February 14, 2001 amendment filed by Brinley and Stewart's counsel on behalf of Stewart, his wife, and Radiology Associates on the ground that those plaintiffs had not filed that amendment to the complaint within the time allowed by the pretrial order. The record does not reveal when the time to file amendments had expired.
At trial, those remaining plaintiffs' counsel, who had represented Brinley as well as Stewart, elicited testimony from Stewart that Johnson and Brinley had breached the 1991 Lauderdale Radiology Group general partnership agreement by causing Florence MRI (Johnson and Brinley's P.C.) to pay the general partnership Lauderdale Radiology Group less than 80% of the "professional component rate" as required by the 1991 Lauderdale Radiology Group general partnership agreement. When the defendants-counterclaimants objected to this testimony as irrelevant to the issues at trial, the plaintiffs' counsel argued that
 "this is part and parcel, and it's part of the contract claims from the beginning, I won't rehash all my arguments that we did yesterday, but we had a breach of contract claim in this case for a long, long time. And this is part of the breach of the contract."
The trial court ruled that the plaintiffs' counsel could question Stewart about how Johnson and Brinley had cheated Stewart out of money by causing their P.C. Florence MRI to pay the general partnership Lauderdale Radiology Group less than 80% of the "professional component rate" "under paragraph 7.4 of the partnership agreement." Stewart also testified that the 1991 Lauderdale Radiology Group general partnership agreement was terminated after he refused to comply with the demands of Brinley and Johnson to drop his lawsuit against Johnson.
The jury returned a verdict in favor of plaintiffs Stewart and his wife and awarded each of them $1 in compensatory damages and $1,000,000 in punitive damages.[1] Johnson v. Stewart,854 So.2d 544 (Ala. 2002). Apparently the jury found in favor of the plaintiffs Stewart, his wife, and Radiology Associates on the defendants-counterclaimants' counterclaims.
Defendants Johnson and his P.C. Florence Radiology Associates moved for a judgment as a matter of law or, in the *Page 8 
alternative, for a new trial, or for remittitur of the punitive damages. The trial court remitted Stewart's punitive damage award to $500,000 and remitted his wife's punitive damage award to $350,000. The Stewarts accepted the remittiturs. The trial court denied all other relief requested by the defendants. Defendant Johnson appealed. Defendant Florence Radiology Associates did not appeal. Stewart, 854 So.2d at 546.
On appeal, this Court held that Johnson was entitled to a JML on the Stewarts' invasion of privacy claim. This Court reversed the judgment of the trial court and remanded the case for entry of a judgment consistent with our opinion. Our opinion does not mention any claim by the plaintiffs other than their invasion of privacy claim. Stewart, supra.
 Issue
In this appeal, plaintiffs Stewart and his P.C. Radiology Associates raise one issue: whether their claims against Brinley, his P.C. Quad-Cities, and Florence MRI (Johnson and Brinley's P.C.) are barred by res judicata or collateral estoppel.
 Standard of Review "Summary judgment is appropriate only when `there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala. R. Civ. P., and Dobbs v. Shelby County Econ. Indus. Dev. Auth., 749 So.2d 425 (Ala. 1999). The court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party. System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala. 1996). `[W]here the evidence is in conflict, the issue must [be tried to the fact-finder].' Kitchens v. Winn-Dixie Montgomery, Inc., 456 So.2d 45, 47
(Ala. 1984). In reviewing a summary judgment, an appellate court, de novo, applies the same standard as the trial court. Dobbs, supra."
Bruce v. Cole, 854 So.2d 47, 54 (Ala. 2003).
The party moving for summary judgment bears "`the burden of production, i.e., the burden of making a prima facie showing that he is entitled to summary judgment.'" Ex parte General MotorsCorp., 769 So.2d 903, 909 (Ala. 1999) (quoting Berner v.Caldwell, 543 So.2d 686, 691 (Ala. 1989) (Houston, J., concurring specially)).
 "`The manner in which the movant's burden of production is met depends upon which party has the burden of proof . . . at trial. If the movant has the burden of proof at trial, the movant must support his motion with credible evidence, using any of the materials specified in Rule 56(c), [Ala.] R. Civ. P. ("pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits"). The movant's proof must be such that he would be entitled to a [judgment as a matter of law] if this evidence was not controverted at trial.'"
Ex parte General Motors, 769 So.2d at 909 (quoting Berner,543 So.2d at 691 (Houston, J., concurring specially)). "In other words, `when the movant has the burden [of proof at trial], itsown submissions in support of the motion must entitle it to judgment as a matter of law.'" Denmark v. Mercantile StoresCo., 844 So.2d 1189, 1195 (Ala. 2002) (quoting Albee Tomato,Inc. v. A.B. Shalom Produce Corp., 155 F.3d 612, 618 (2d Cir. 1998)). Otherwise, the burden of production does not shift to the nonmovant, and the movant cannot prevail on the motion. See Exparte General Motors, supra. *Page 9 
 Law
Axiomatically, res judicata and collateral estoppel operate only between parties (and their respective privies) who or which have already opposed each other in at least one claim that has been litigated to a judgment. If neither a party nor any of that party's privies has litigated at least one claim to a judgment against another party nor any of the other party's privies, neither res judicata and collateral estoppel can bar either of those parties or any of that party's privies from suing the other party or any of the other's privies. See Lee L. Saad Constr. Co.v. DPF Architects, P.C., 851 So.2d 507, 520 (Ala. 2002), LeonC. Baker, P.C. v. Merrill Lynch, Pierce, Fenner Smith,821 So.2d 158, 165 (Ala. 2001), Equity Res. Mgmt., Inc. v. Vinson,723 So.2d 634 (Ala. 1998), and Hughes v. Martin, 533 So.2d 188
(Ala. 1988).
 "The essential elements of res judicata are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions. If those four elements are present, then any claim that was, or that could have been, adjudicated in the prior action is barred from further litigation. Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 725-26 (Ala. 1990)."
Equity Res. Mgmt., 723 So.2d at 636. "If these essential elements are met, any issue that was, or could have been, adjudicated in the prior action is barred from further litigation." Hughes, 533 So.2d at 190.
 "Rule 13(a), Ala. R. Civ. P., and Rule 13(a), Fed.R.Civ.P., provide:
 "`A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.'
 "(Emphasis added.) The purpose of Rule 13 `is to avoid circuity of actions and to enable the court to settle all related claims in one action and thereby avoid a wasteful multiplicity of litigation on claims that arose from a single transaction or occurrence.' Grow Group, Inc. v. Industrial Corrosion Control, Inc., 601 So.2d 934, 936 (Ala. 1992), citing 6 Charles Alan Wright, Arthur R. Miller Mary Kay Kane, Federal Practice and Procedure: Civil § 1409 (2d ed. 1990). To effect the purpose of Rule 13, the consequence for failing to assert a compulsory counterclaim is a bar against the assertion of that claim in any other action. See Brooks v. Peoples Nat'l Bank of Huntsville, 414 So.2d 917, 920 (Ala. 1982); Owens v. Blue Tee Corp., 177 F.R.D. 673, 682
(M.D.Ala. 1998).
 "The drafters of Rule 13, Ala. R. Civ. P., intended to adopt the `logical relationship' test for determining whether a counterclaim is compulsory. `A counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim.' Committee Comments on 1973 Adoption of Rule 13, ¶ 6. Under the logical-relationship standard, a counterclaim is compulsory if `(1) its trial in the original action would avoid a substantial duplication of effort or (2) the original claim and the counterclaim arose out of the same aggregate core of operative facts.' Ex parte Canal Ins. Co., 534 So.2d 582, 584 (Ala. 1988) (quoting Brooks v. Peoples Nat'l Bank of Huntsville, 414 So.2d 917, 919 (Ala. 1982)). In determining whether the claims `arose *Page 10 
out of the same core of operative facts,' this Court must determine whether `(1) the facts taken as a whole serve as the basis for both claims or (2) the sum total of facts upon which the original claim rests creates legal rights in a party which would otherwise remain dormant.' Canal Ins., 534 So.2d at 584."
Ex parte Cincinnati Ins. Cos., 806 So.2d 376, 379-80 (Ala. 2001) (second and third emphasis added). "Basically, [the logical-relation test] allows a court to apply Rule 13(a) to any counterclaim which should have been tried with the original claim in order to avoid a substantial duplication of effort." Ex parteReliance Ins. Co., 404 So.2d 610, 612 (Ala. 1981).
 "For the doctrine of collateral estoppel to apply, the following elements must be established:
 "`"(1) that an issue in a prior action was identical to the issue litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions."
 "`Smith v. Union Bank Trust Co., 653 So.2d 933, 934 (Ala. 1995). "`Where these elements are present, the parties are barred from relitigating issues actually litigated in a prior [action].'" Smith, 653 So.2d at 934 (quoting Lott v. Toomey, 477 So.2d 316, 319 (Ala. 1985)).'
 "Biles v. Sullivan, 793 So.2d 708, 712 (Ala. 2000). `Only issues actually decided in a former action are subject to collateral estoppel.' Leverette ex rel. Gilmore v. Leverette, 479 So.2d 1229, 1237
(Ala. 1985) (emphasis added). The burden is on the party asserting collateral estoppel to prove that the issue it is seeking to bar was determined in the prior adjudication. See Adams v. Sanders, 811 So.2d 542, 545 (Ala.Civ.App. 2001) (`Because we have no transcript of the trial in the district court, the burden is on Sanders to show that the district court determined that he was not negligent.'). See also United States v. Cala, 521 F.2d 605, 608 (2d Cir. 1975) (`The burden . . . is on [the one asserting collateral estoppel] to establish that the issue he seeks to foreclose from litigation in the present prosecution was necessarily decided in his favor by the prior verdict.')."
Lee L. Saad Constr. Co., 851 So.2d at 520.
 "Ordinarily, `[a] party to the second suit will not be [barred by res judicata or collateral estoppel] from relitigating an issue unless all of the requisite elements exist. It is noteworthy that Alabama has not followed the trend of abolishing the requirement that parties be identical, sometimes referred to as the mutuality of estoppel requirement.' McMillian v. Johnson, 878 F.Supp. 1473, 1520 (M.D.Ala. 1995), rev'd in part on other grounds, 88 F.3d 1554 (11th Cir. 1996), cert. denied, 521 U.S. 1121, 117 S.Ct. 2514, 138 L.Ed.2d 1016 . . . (1997). `An exception is made to this requirement for parties in privity with a party to the prior action.' Id. (emphasis added). Thus, regardless of the fact that the PC was not a named party in [Baker v. Bennett (No. 1940172), 667 So.2d 743 (Ala. 1995) (table) (affirming without opinion circuit case no. CV-94-0529 on May 26, 1995)], it will be bound by that judgment if it was in privity with Baker.
 "`"The term `privity' has not been uniformly defined with respect to [res judicata and collateral estoppel]."' Hughes v. Martin, 533 So.2d 188, 191
(Ala. 1988) (quoting Issue Preclusion in Alabama, 32 Ala. L.Rev. 500, 520-21 (1981)). Privity is often deemed, however, *Page 11 
to arise from `"(1) the relationship of one who is privy in blood, estate, or law; (2) the mutual or successive relationship to the same rights of property; [or] (3) an identity of interest in the subject matter of litigation."' Id. Thus, the existence of privity has generally been resolved `"on an ad hoc basis in which the circumstances determine whether a person should be bound by or entitled to the benefits of a judgment."' Id. See also Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 726
(Ala. 1990) (collecting cases)."
Leon C. Baker, P.C., 821 So.2d at 165.
Rule 13, Ala. R. Civ. P., does not require a plaintiff to cross-claim against a co-plaintiff, or a defendant to cross-claim against a co-defendant, in order to avoid a res judicata or collateral estoppel bar. Rather, cross-claims "may either [be] plead[ed] . . . in the original action or reserve[d] . . . for later and independent litigation." AAA Equip. Rental, Inc. v.Bailey, 384 So.2d 107, 109 (Ala. 1980). Accord Champ Lyons, Jr., Alabama Rules of Civil Procedure Annotated, Rule 13, Author's Comments § 13.13 (3d ed. 1996).
Res judicata and collateral estoppel are affirmative defenses. Rule 8(c), Ala. R. Civ. P. The party asserting an affirmative defense bears the burden of proving it. Ex parteRamsay, 829 So.2d 146 (Ala. 2002).
 Analysis
In the Lauderdale County Circuit Court the defendants-appellees in that action, Brinley, his P.C. Quad-Cities, and his and Johnson's P.C. Florence MRI, asserted the affirmative defenses ofres judicata and collateral estoppel and thereby won summary judgment against the plaintiffs-appellants Stewart and his P.C. Radiology Associates on their claims in that action. The theory of these affirmative defenses in the Lauderdale County litigation was that the claims of Stewart and his P.C. in their Lauderdale County action were barred by the participation of Stewart and his P.C. in the previous Jefferson County litigation. The Lauderdale County action defendants, Brinley, Quad-Cities, and Florence MRI bore the burden of proving these affirmative defenses. Ex parteRamsay, supra.
At no time while the Jefferson County trial court was allowing any of the parties to plead claims in that litigation, did Stewart or his P.C. Radiology Associates plead any claim against Brinley or his P.C. Quad-Cities, nor did Brinley or his P.C. Quad-Cities plead any claim against Stewart or Radiology Associates. While Stewart, his wife, and Radiology Associates did include in their February 14, 2001 proffered amendment allegations critical of Brinley and Quad-Cities, that proffered amendment was filed after the time for pleading claims had expired, and accordingly that proffered amendment was disallowed. Moreover, even that proffered amendment did not purport to add Brinley or Quad-Cities as defendants or otherwise to assert any claim against them. Therefore, the proffered February 14, 2001 amendment did not constitute a claim, much less a claim litigated to a judgment, between Stewart, his wife, or Radiology Associates on the one hand and Brinley or Quad-Cities on the other. See Exparte Sears, Roebuck Co., 895 So.2d 265 (Ala. 2004).
The first counterclaims, filed in the Jefferson County litigation on October 14, 1998, did include a "counterclaim" by Florence MRI (Brinley and Johnson's P.C.) against Stewart, his wife, Radiology Associates, Brinley, and Quad-Cities. While Florence MRI was owned by both Brinley and Johnson, it was represented by Johnson's counsel in asserting this *Page 12 
counterclaim; Brinley and Quad-Cities were sued by this counterclaim just as Stewart, his wife, and Radiology Associates were; and all of these defendants-in-counterclaim were represented by the same counsel, who was opposed to Johnson's counsel who filed the counterclaim. Therefore, in this counterclaim, neither Brinley nor Quad-Cities was in privity with the counterclaimant Florence MRI even though Brinley owned part of it. Thus the counterclaim by Florence MRI did not constitute a claim by a party in privity with Brinley or Quad-Cities against Stewart, his wife, or Radiology Associates. The privity, if any existed in this counterclaim, existed, as at all times during the pleading stage of the Jefferson County litigation, among Brinley, Quad-Cities, Stewart, his wife, and Radiology Associates, who or which were all co-plaintiffs and co-defendants-in-counterclaim represented by the same counsel.
Similarly, the first counterclaims included a "counterclaim" by Lauderdale Radiology Group (the general partnership composed of Johnson's, Brinley's, and Stewart's respective P.C.'s) against Stewart, his wife, Radiology Associates, Brinley, and Quad-Cities. For the same reasons the counterclaim by Florence MRI did not constitute a claim by any party in privity with Brinley or Quad-Cities against Stewart, his wife, or Radiology Associates, the counterclaim by Lauderdale Radiology Group did not either. That is, while Brinley owned Quad-Cities, which, in turn, owned a one-third interest in the counterclaimant Lauderdale Radiology Group, this counterclaimant was represented by Johnson's counsel; Brinley and his P.C. Quad-Cities (a one-third owner of this counterclaimant) were sued by this counterclaim just as Stewart, his wife, and Radiology Associates were; and all of these defendants-in-counterclaim were represented by the same counsel in opposition to the counterclaim. Once again, the privity if any, existed among Brinley, Quad-Cities, Stewart, his wife, and Radiology Associates.
Likewise, the counterclaim by Lauderdale Radiology Group did not constitute a claim by a party in privity with Stewart, his wife, or Radiology Associates against either Brinley or Quad-Cities. While Stewart owned Radiology Associates, which, in turn, owned a one-third interest in the counterclaimant Lauderdale Radiology Group, this counterclaimant was represented by Johnson's counsel; Stewart and his P.C. Radiology Associates (a one-third owner of this counterclaimant) were sued by this counterclaim just as Stewart's wife, Brinley, and Quad-Cities were; and, once again, all of these defendants-in-counterclaim were represented by the same counsel in opposition to the counterclaim. Thus, still, the privity, if any, existed, not between Stewart or his P.C. Radiology Associates and the counterclaimant Lauderdale Radiology Group, and not between Brinley or his P.C. Quad-Cities and this counterclaimant, but among Stewart, his wife, Radiology Associates, Brinley, and Quad-Cities.
Therefore, at no time during the Jefferson County litigation did Stewart, his wholly-owned P.C. Radiology Associates, or any privy of either Stewart or his P.C. effectively assert, much less litigate to a judgment, any claim against Brinley or his wholly-owned P.C. Quad-Cities. Nor did Brinley or Quad-Cities or any privy of either assert any claim against Stewart or Radiology Associates and thereby confront them with the choice between either asserting a counterclaim or incurring the bar of eitherres judicata or collateral estoppel. Ex parte Cincinnati Ins.Cos., supra. Therefore, in the subsequent Lauderdale County litigation, neither res judicata nor *Page 13 
collateral estoppel was a valid defense for Brinley or Quad-Cities.
On the other hand, in the Jefferson County litigation, the "counterclaim" by, among others, Florence MRI against, among others, Stewart and his P.C. Radiology Associates confronted both of them with the choice of either asserting their claims against Florence MRI as compulsory counterclaims or incurring a resjudicata bar to such claims in any subsequent litigation. SeeEx parte Cincinnati Ins. Cos., supra. Therefore, in the subsequent Lauderdale County litigation, res judicata was a valid defense for Florence MRI.
 Conclusion
While the record supports the conclusion that the defense ofres judicata entitled the defendant-appellee Florence MRI to judgment as a matter of law, the record does not support the conclusion that either the defense of res judicata or the defense of collateral estoppel entitled either of the defendants-appellees Brinley or Quad-Cities to judgment as a matter of law. Therefore, the Rule 54(b) partial summary judgment is affirmed insofar as it applies to the claims against Florence MRI but is reversed insofar as it applies to the claims against Brinley and Quad-Cities. This cause is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NABERS, C.J., and HOUSTON, LYONS, and WOODALL, JJ., concur.
[1] The record is silent whether the jury returned a verdict for, or against, plaintiff Radiology Associates.