PITTMAN, Judge.
J.O.S. (“the mother”) and S.J.S. (“the father”), who are the natural parents of L.S.S., a minor child (“the child”), appeal from an order of the Marshall Juvenile Court entered on December 21, 2005.
The abbreviated record reveals that the child was born in May 2002; the child’s birth certificate lists the mother[1] and the father as the child’s parents. According to the judge’s remarks at a December 20, 2005, hearing, a dependency petition as to the child had previously been filed in the juvenile court (case no. JU-02-838.01) and custody of the child had been awarded to the child’s paternal aunt, B.R. (“the aunt”), and her husband, S.R. (“the uncle”). The aunt and the uncle then apparently filed an action seeking termination of the parental rights of the mother and the father (case no. JU-02-888.02); although the father was dismissed as a party to that proceeding, the mother’s parental rights were terminated by a judgment entered after she had defaulted in that proceeding. Unfortunately, however, the record contains few pleadings, motions, judgments, or other filings in either of those actions.
In October 2004, the aunt and the uncle filed a petition in the Marshall Probate Court seeking to adopt the child. In that petition, the aunt and the uncle averred, among other things, (1) that the parental rights of the mother had been terminated, (2) that the father was the “putative father” of the child, and (3) that the father was not entitled to notice of the adoption proceeding and had given his irrevocable implied consent to the proposed adoption because he had not filed a notice of intent to claim paternity pursuant to § 26-10C-1 et seq., Ala.Code 1975 (the Putative Father Registry Act). The probate court entered an interlocutory order, pursuant to § 26-10A-18, Ala.Code 1975, transferring to the aunt and the uncle the responsibility for the child’s maintenance and support.
On December 28, 2004, the father filed in the juvenile court a “motion for change of custody” in which he sought reunification with the child; the father averred in that motion that custody of the child had been taken away from him “and his former wife” (¿&, the mother) when the child was approximately nine months old and that he *943 “and his former wife” had allowed the child to be placed with the aunt and the uncle at that time. The motion was supported by the father’s affidavit, in which the father testified that he and his wife had “separated” and that he was “in the process of obtaining a divorce from her.” That motion was apparently deemed by the juvenile court to have commenced a new action (case no. JU-02-838.03). Subsequently, the father filed a response in the probate court to the adoption petition of the aunt and the uncle in which he averred that temporary custody of the child had been taken from him and from the mother, that his parental rights had not been terminated, and that either his consent or the termination of his parental rights was necessary to grant the adoption petition. The father also filed an affidavit in the probate court indicating that he did not consent to the proposed adoption, and he subsequently filed a motion to dismiss the adoption petition.
On April 14, 2005, the father filed in the probate court a “petition for removal” in which he sought the discretionary removal of the adoption proceeding to the juvenile court. See generally § 12-15-30(5), Ala. Code 1975 (which allows removal of adoption proceedings from probate court to juvenile court upon motion of a party), and Ex parte Hicks, 451 So.2d 324, 327 (Ala. Civ.App.1984) (probate court has the discretion to grant or deny removal). In that petition, the father averred that he was the father of the child involved in the adoption proceeding, that there had been no “final settlement” of the pending adoption proceeding or the motion for return of custody, and that the adoption proceeding could be better administered in the juvenile court. The probate court granted that petition and transferred outright the adoption proceeding to the juvenile court,[2] after which the juvenile court docketed the adoption proceeding as case no. JU-02-838.04.
In November 2005, the father filed a motion in the juvenile court to dismiss the adoption petition, averring that the adoption petition appeared to rely on the proposition that the father and the mother “were allegedly not married at the time of the birth of the child” and reiterating the argument that the proposed adoption should not proceed without his consent. On the same day, the aunt and the uncle filed a motion seeking a partial summary judgment in their favor concerning whether the father was barred from contesting the proposed adoption because he had failed to comply with the registration provisions of the Putative Father Registry Act. Apparently, at least one other pertinent motion (which does not appear in the record) was also filed in the juvenile court in one of the four actions: a motion for relief from the default judgment entered against the mother in 'case no. JU-02-838.02. At an omnibus hearing on December 20, 2005, on the motions before the juvenile court, that court orally indicated that it would “decline to set aside the default,” ie., would deny the motion for relief from the judgment terminating the mother’s parental rights, and that it would grant the summary-judgment motion filed by the aunt and the uncle regarding the father’s consent to the adoption. The juvenile court entered an order on the following day in case no. JU-02-838.04 in which it purported to expressly grant the summary-judgment motion that had been *944 filed by the aunt and the uncle and to “return” the case to the probate court. However, the record does not reflect the existence of any written order addressing the mother’s motion for relief in case no. JU-02-838.02. The guardian ad litem for the child filed a timely postjudgment motion, which was denied. Both the mother and the father have appealed from the juvenile court’s rulings. The aunt and the uncle have not favored this court with briefs;[3] however, the aunt and the uncle filed a motion to dismiss the mother’s appeal on the basis that it was untimely and to dismiss the father’s appeal on the basis that it was taken from a nonfinal judgment.
Because “ ‘jurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu,’ ” Wallace v. Tee Jays Mfg. Co., 689 So.2d 210, 211 (Ala.Civ.App.1997) (quoting Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987)), we must first consider whether we have jurisdiction over the appeal. The mother has attempted to appeal from the juvenile court’s oral determination that she was not entitled to relief from that court’s earlier judgment in case no. JU-02-838.02 terminating her parental rights. However, this court has jurisdiction to consider appeals only from a juvenile court’s “final order[s] or judgment[s].” Rule 4(a)(1)(E), Ala. RApp. P. As our Supreme Court noted in Ex parte Chamblee, 899 So.2d 244 (Ala.2004), Rule 58(a), Ala. R. Civ. P., which applies to juvenile-court proceedings because no other procedure is specifically provided by a contrary statute or juvenile-procedure rule (see Rule 1, Ala. R. Juv. P.), “requires ... a written memorialization by the judge of his or her rendition of the order or judgment in question.” 899 So.2d at 248 (emphasis added). “Stated otherwise, Rule 58(a) does not allow for an oral rendition of a judgment or order.” Id. Because the juvenile court, for all that appears in the record, has not rendered a written judgment denying relief to the mother in a form that complies with Rule 58(a) and has not caused the entry of such a compliant judgment in accordance with Rule 58(c), Ala. R. Civ. P., we have no “final order” or “judgment” presented for review as to the mother, and therefore we must dismiss the appeal as to the mother for lack of jurisdiction.
As to the father’s appeal, the appeal is taken from a final judgment of the juvenile court in conformity with Rule 58; thus, we have jurisdiction to adjudicate his appeal. We note that an appellate court reviews a summary judgment de novo, “ ‘us[ing] the same standard of review the trial court used “in determining whether the evidence before the court made out a genuine issue of material fact.” ’ ” Ex parte Union Camp Corp., 816 So.2d 1039, 1042 (Ala. 2001) (quoting Jefferson County Comm’n v. ECO Pres. Servs., L.L.C., 788 So.2d 121, 126 (Ala.2000), quoting in turn Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988)). We note the following additional principles of law that are pertinent to our review:
“The party moving for summary judgment bears ‘ “the burden of production, i.e., the burden of making a prima facie showing that he is entitled to summary judgment.” ’ Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala.1999) (quoting Berner v. Caldwell, 543 So.2d 686, 691 (Ala.1989) (Houston, J., concurring specially)).
“ ‘ “The manner in which the movant’s burden of production is met depends *945 upon which party has the burden of proof ... at trial. If the movant has the burden of proof at trial, the mov-ant must support his motion with credible evidence, using any of the materials specified in Rule 56(c), [Ala.] R. Civ. P. (‘pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits’). The movant’s proof must be such that he would be entitled to a [judgment as a matter of law] if this evidence was not controverted at trial.” ’
“Ex parte General Motors, 769 So.2d at 909 (quoting Berner, 543 So.2d at 691 (Houston, J., concurring specially)). ‘In other words, “when the movant has the burden [of proof at trial], its own submissions in support of the motion must entitle it to judgment as a matter of law.” ’ Denmark v. Mercantile Stores Co., 844 So.2d 1189, 1195 (Ala.2002) (quoting Albee Tomato, Inc. v. AB. Shalom Produce Corp., 155 F.3d 612, 618 (2d Cir.1998)). Otherwise, the burden of production does not shift to the nonmov-ant, and the movant cannot prevail on the motion. See Ex parte General Motors, supra.”
Stewart v. Brinley, 902 So.2d 1, 8 (Ala. 2004).
In this case, the aunt and the uncle have the burden of demonstrating their entitlement to adopt the child. One of the components of that showing is obtaining the consent of all parties listed in § 26-10A-7, Ala.Code 1975, including the consent of either the “presumed father” or the “putative father” of the child. A “presumed father” is defined in § 26-10A-2 as “[a]ny male person as defined in the Alabama Uniform Parentage Act,” i.e., Ala. Code 1975, § 26-17-1 et seq., while a “putative father” is defined in § 26-10A-2 as “[t]he alleged or reputed father” of a child made the subject of an adoption proceeding.
The Adoption Code does envision that the consent of any parent• — whether a mother, a “presumed father,” or a “putative father” — may be deemed legally implied from the occurrence of a number of actions or omissions. See Ala.Code 1975, § 26-10A-9(a). For example, a failure “to comply with § 26-10C-1,” a portion of the Putative Father Registry Act, will form the basis of an implied necessary consent to an adoption. Ala.Code 1975, § 26-10A-9(a)(5). However, the corresponding provision of the Putative Father Registry Act, by its terms, plainly indicates that that implication of consent arises only as to putative fathers of children bom out of wedlock. Section § 26 — 10C—1 (i), Ala.Code 1975, effective January 1, 1997, provides that “[a]ny person who claims to be the natural father of a child and fails to file his notice of intent to claim paternity ... prior to or within 30 days of the birth of a child bom out of wedlock” is “deemed to have given an irrevocable implied consent in any adoption proceeding” as to that child, and it further provides that filing with the putative father registry a notice of intent to claim paternity “shall be the exclusive procedure available” to entitle “any person who claims to be the natural father of a child bom out of wedlock ... to notice of and the opportunity to contest any adoption proceeding” as to that child (emphasis added). Thus, for a would-be adoptive parent of a child to demonstrate the implied consent of that child’s putative father or presumed father under § 26-10A-9(a)(5) and § 26-10C-1®, he or she must show not only that no notice of intent to claim paternity was filed but also that the child at issue was born out of wedlock.
In this case, the aunt and the uncle, the parties upon whom the Adoption Code places the burden of proof, filed a two- *946 page summary-judgment motion that was unsupported by any affidavits, admissions, interrogatory responses, deposition transcripts, or other evidentiary material; the sole contention made by the aunt and the uncle was that the “unwed” father’s consent to the child’s adoption should be deemed implied by his failure to file a notice of his intent to claim paternity with the putative father registry under § 26-10C-l(i). However, the aunt and the uncle did not meet their burden of production as to whether the child was, in fact, born “out of wedlock” so as to fall within the scope of § 26-10C-1®.[4] As Stewart notes, the movants’ “own submissions in support of the motion must entitle [them] to judgment as a matter of law,” otherwise “the burden of production does not shift to the nonmovant,” ie., the father. 902 So.2d at 8 (emphasis omitted). Because that burden of production was not met, the juvenile court erred in entering the summary judgment in favor of the aunt and the uncle, and that judgment is due to be reversed and the cause remanded for further proceedings. The aunt and the uncle’s motion to dismiss is denied.
MOTION TO DISMISS DENIED; APPEAL DISMISSED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, P.J., and THOMPSON, MURDOCK, and BRYAN, JJ., concur.

. The mother is identified by another name (J.A.O.) in the birth certificate.

. Compare Ex parte C.L.C., 897 So.2d 234 (Ala.2004) (holding that when a probate court expressly transfers an adoption proceeding for the limited purpose of terminating parental rights under § 26-10A-3, Ala.Code 1975, the juvenile court does not gain jurisdiction to act on petition to adopt).

. The juvenile court certified the record as being adequate for appellate review. See Rule 28(D), Ala. R. Juv. P. (as amended effective January 5, 2006).

. Of course, marriages in this state may be ceremonially solemnized in accordance with § 30-1-1 et seq., Ala.Code 1975, or may be entered into as at common law; however, common-law marriages are '‘co-equal” with ceremonial marriages. See Mattison v. Kirk, 497 So.2d 120, 122 (Ala.1986). If the father and the mother, as the father contends, were married by either means, and the child was born "during the marriage,” not only would Alabama's paternity law deem the child to have been born to the father, but Alabama's Adoption Code would also classify the father as a "presumed father” whose consent to a proposed adoption of the child would be necessary. See Ala.Code 1975, §§ 26-17-5(a)(l) and 26-10A-7(a)(3)a. (neither of which is limited by its terms to ceremonial marriages).