THOMPSON, Presiding Judge,
dissenting.
I must respectfully dissent. I conclude that the mother’s appeal is taken from a nonfinal order and, therefore, that this appeal should be dismissed. See Bacadam Outdoor Adver., Inc. v. Kennard, 721 So.2d 226, 229 (Ala.Civ.App.1998) (a nonfinal judgment will not support an appeal).
On August 27, 2010, the juvenile court found the children to be dependent and ordered that reunification efforts were not required to be made with regard to the father. In February 2011, the juvenile court conducted a permanency hearing, and, on February 10, 2011, it entered an order in which it, among other things, determined that reasonable efforts toward reunification had been made with regard to the mother, that those efforts had failed, but that DHR was to continue to provide reunification services to the mother.
DHR investigated placing the child with Fi.V.0., the child’s maternal uncle. It is undisputed that Fi.V.0. is an undocumented alien, that he could not provide DHR social workers with valid identification or verification of his rental agreement or income, and that DHR could not perform a background check on him.
The juvenile court conducted an ore ten-us review hearing on August 4, 2011. At that hearing, the children’s guardian ad litem indicated that she opposed placing the children with Fi.V.0. Also at that hearing, DHR informed the juvenile court that it had changed its permanency goal from placing the children with a relative to seeking the termination of the parents’ parental rights. The juvenile court noted during the hearing that on August 3, 2011, the day before the hearing, DHR had filed petitions seeking to terminate the parents’ parental rights to the children. Those petitions are not contained in the record on appeal in this matter.
*22 In the January 3, 2012, orders from which this appeal is taken, the juvenile court again found that reasonable efforts to reunite the children with the mother had been made but that those efforts had failed. In addition, the juvenile court found that “[t]he most appropriate permanency plan is adoption” and that the children were to remain in DHR’s custody. I conclude that a finding of dependency was implicit in those January 3, 2012, orders. See L.L.M. v. S.F., 919 So.2d 307, 311 (Ala.Civ.App.2005) (“Given the factual findings contained in the ... judgment, we conclude that a finding of dependency was implicit in the trial court’s judgment.”); and M.B. v. R.P., 3 So.3d 237, 246 (Ala.Civ.App.2008) (same).
This court has held that an order finding a child dependent but not modifying the custodial arrangement for the child will not support an appeal “[b]ecause a change in the disposition of the child was not at issue, [and, therefore,] the juvenile court’s order was not a final, appealable judgment.” Ex parte K.S., 71 So.3d 712, 715 (Ala.Civ.App.2011); see also Ex parte T.C., 96 So.3d 123, 129-30 (Ala.2012). In this case, the custodial arrangement for the children has not changed; the order specified that the children were to remain in DHR’s custody in foster care. Regardless, the main opinion concludes that the juvenile court’s January 3, 2012, orders are “final and appealable,” and it relies, in part, on D.P. v. Limestone County Department of Human Resources, 28 So.3d 759 (Ala.Civ.App.2009). 145 So.3d at 14.
In D.P., supra, the juvenile court determined that the permanency plan for a dependent child was “return to parent,” and it relieved DHR of the requirement that it work toward reunification of the father and the child. This court held that the order was sufficiently final to support the appeal because it “could” result, in the future, in depriving a parent of the fundamental right to the custody of his or her child. D.P., 28 So.3d at 764. In later cases relying on D.P., supra, this court continued to conclude that orders relieving DHR from its obligation to make reunification efforts were appealable. See E.E.R. v. Marion Cnty. Dep’t of Human Res., 89 So.3d 792, 793 n. 1 (Ala.Civ.App.2012); L.M. v. Jefferson Cnty. Dep’t of Human Res., 68 So.3d 859 (Ala.Civ.App.2011); and M.H. v. Jefferson Cnty. Dep’t of Human Res., 42 So.3d 1291, 1293 (Ala.Civ.App.2010); see also L.S. v. Shelby Cnty. Dep’t of Human Res., 28 So.3d 804, 805 (Ala.Civ.App.2009) (relying on D.P. to conclude that an appeal from a permanency order was final). As is explained below, I now believe that those cases were wrongly decided,[12] and, therefore, I believe that the main opinion has erred in relying on D.P., supra, in concluding that the orders at issue in this appeal are sufficiently final to support the appeal.
It is clear that our legislature did not intend that a juvenile-court order that approves a change in a permanency plan be considered sufficiently final to support an appeal. Section 12-15-312(c) of the Alabama Juvenile Justice Act (“AJJA”), § 12-15-101 et seq., Ala.Code 1975, sets forth circumstances under which a juvenile court may determine that DHR is not required to make reasonable efforts to reunite a dependent child with his or her parent. The AJJA then provides:
“If reasonable efforts are not made with respect to a child as a result of a deter *23 mination made by a juvenile court in situations as described in [§ 12-15-312(c) and (d) ], a permanency hearing ... shall be held for the child within 30 days after the determination .... ”
§ 12-15-312(e), Ala.Code 1975 (emphasis added).[13] Thus, the legislature intended that the juvenile court conduct a permanency hearing shortly after making a finding that reasonable efforts toward reunification are no longer required. The provision for the hearing under § 12-15-312(e) is inconsistent with an intention by the legislature that a determination relieving DHR of further reunification efforts be appealable. An appeal of an order relieving DHR of making reunification efforts could not be completed within 30 days, and, therefore, allowing a party to take such an appeal would nullify the provision in § 12-15-312(e) providing for the expeditious permanency hearing following a determination that reasonable efforts at reunification are no longer required. See Ex parte Watley, 708 So.2d 890, 892 (Ala. 1997) (It is presumed that the legislature did not do a useless thing in enacting a statute.). Given the foregoing and the language of § 12-15-312(e), I cannot agree with the conclusion in D.P., supra, and the other decisions cited earlier in this writing that a juvenile-court order relieving DHR of the responsibility of providing reunification services is sufficiently final to support an appeal to this court. I conclude that the main opinion erred in relying on D.P., supra, in reaching its holding in this appeal.[14]
*24 Similarly, I also believe that the AJJA demonstrates that the legislature did not intend that all orders approving a change to DHR’s permanency plan for a dependent child are appealable. Section 12-15-315, Ala.Code 1975, requires that DHR submit a permanency plan for a dependent child to the juvenile court within 12 months of the child’s being placed in foster care and every 12 months thereafter. In addition, that section dictates that a juvenile court conduct a permanency hearing every 12 months. § 12-15-315(a). That statute specifies that its purpose is “to ensure that a permanent plan is prepared by the Department of Human Resources and presented to the juvenile court within 12 months of the placement of any child in foster care and no less frequently than every 12 months thereafter” and that “[t]he purpose of the permanency hearing shall be to determine the permanency plan for the child.” § 12-15-315(a), Ala.Code 1975. Thus, the stated legislative intent of § 12-15-315(a) establishes that that section is administrative and designed to ensure that DHR and the juvenile court regularly review each action involving a dependent child so that no child is inadvertently left to languish in the foster-care system without regular and periodic reviews of his or her circumstances. See, e.g., Ex parte W.T.M., 851 So.2d 55, 65 n. 6 (Ala.Civ.App.2002) (Murdock, J., dissenting) (“The intent expressed in § 12-15-62(c)[, the predecessor to § 12-15-315(a),] is to ensure that DHR develops and proposes a timely permanent plan for a child who is placed in foster care.... ”).
In this case, the record indicates that DHR had submitted a permanency plan to the juvenile court in compliance with § 12-15-315(a). The effect of the juvenile court’s January 3, 2012, orders was to agree that DHR had taken the necessary steps to ensure the protection of the children’s interests under the AJJA and that DHR had properly reached its decision to change its administrative plan to seek the adoption of the children in this case. I cannot agree with the main opinion that the juvenile court’s January 3, 2012, orders approving the change in DHR’s permanency plan, reached after following the requirements of the AJJA and its own internal administrative guidelines, amounted to rulings that would so affect fundamental rights as render those orders sufficiently final to support an appeal. Further, our supreme court’s recent decision in Ex parte T.C., supra, discussed below, mandates against an interpretation finding an order approving a change in a permanency plan to be sufficiently final to support an appeal.
In Ex parte T.C., supra, our supreme court affirmed this court’s holding in T.C. v. Mac.M., 96 So.3d 115 (Ala.Civ. App.2011), that the order at issue was a pendente lite dependency order and, therefore, that that interlocutory order was incapable of supporting the appeal. In doing so, our supreme court rejected the argument by the father, which incorporated the reasoning of the dissent in T.C. v. Mac.M., supra, that the dependency finding alone rendered the juvenile court’s order sufficiently final to support the appeal.[15] Our supreme court con- *25 eluded, among other things, that the specification in § 12-15-601 that the procedures for appeals shall be pursuant to the rules of procedure adopted by the supreme court indicated the legislature’s intent that appeals from juvenile-court orders continue to be taken only from final orders or judgments.[16] The supreme court explained:
“As the Court of Civil Appeals stated in its opinion dismissing the father’s appeal: ‘[T]he legislature, in enacting the [2008] AJJA, did not alter the procedure for appeals from the juvenile court to allow for appeals from nonfinal orders of the juvenile court; rather, it left in place the well established procedure by which final orders and judgments of the juvenile court may be appealed. Thus, Rule 28, Ala. R. Juv. P., continues to govern the detailed procedure for appeals from the juvenile court, and that rule expressly authorizes appeals only from “final orders, judgments, or decrees of the juvenile court.” ’ [T.C. v. Mac.M.,] 96 So.3d at 115.”
Ex parte T.C., 96 So.3d at 129.
In Ex parte T.C., supra, our supreme court also agreed with the assertion of the dissent in T.C. v. MacM., supra, that dependency findings and other juvenile-court determinations that are interlocutory sometimes impact a parent’s fundamental rights. Regardless, the supreme court determined, not all orders that might affect fundamental rights are appealable, and it stated that allowing appeals of interlocutory orders in juvenile eases defeats the goal of the AJJA to reunite a parent and child expeditiously. See Ex parte T.C., 96 So.3d at 128-29 (“[T]he goal of both the former AJJA and the 2008 AJJA [is] reuniting parents and children as quickly as possible.”). The court stated:
“[I]f we were to conclude that the legislature was providing for appeals of all interlocutory orders in juvenile proceedings, those appeals would include orders setting hearings and trials, discovery, venue, and numerous other orders that are routinely entered by juvenile courts, along with other nonfinal orders entered in juvenile proceedings, which would include, but certainly not be limited to, orders in delinquency cases, probable-cause orders in juvenile involuntary commitments, and detainment orders. As the Court of Civil Appeals points out, allowing appeals from nonfinal orders would slow the resolution of juvenile cases, and it is forseeable that a party could appeal every adverse nonfi-nal order as a dilatory tactic. Generally, delaying juvenile proceedings for interlocutory appeals would be counter to a juvenile’s best interest. Had the legislature intended to provide for appeals from an order finding a child dependent, it could have easily done so without the unintended consequences of allowing all nonfinal orders in juvenile cases to be appealable.... [W]hen the legislature enacted the 2008 AJJA (revising, reorganizing, and repealing parts of the former AJJA) it may not have referred to the right to appeal from a ‘final’ judg- *26 merit or order, but merely referred to the right to appeal a judgment or order. That language choice, however, does not reflect the legislature’s intent to make all orders in juvenile proceedings ap-pealable.”
Ex parte T.C., 96 So.3d at 129-30.
Thus, a dependency finding alone, one that is not coupled with an order changing custody of the child, is not an order that will support an appeal. Ex parte T.C., supra; Ex parte K.S.; and C.L. v. D.H., 916 So.2d 622, 624-26 (Ala.Civ.App.2005). I cannot conclude that, under that authority, an order approving an administrative agency’s plan to take further action in compliance with a governing statute and its own internal administrative regulations would be treated as final so as to support an appeal. To paraphrase our supreme court, “[h]ad the legislature intended to provide for appeals from an order [approving a change in DHR’s permanency plan for the child], it could have easily done so.” Ex parte T.C., 96 So.3d at 129. However, the legislature did not provide for such appeals. Accordingly, I disagree with the main opinion’s conclusion that the juvenile court’s approval of the change in DHR’s permanency plans for the children constituted a final order or judgment.
I also conclude that the main opinion’s consideration of this appeal on the merits exemplifies the bases for the concerns expressed by our supreme court in Ex parte T.C., supra, concerning the delay that will result in juvenile actions because of the review of interlocutory orders. In this
case, the parents first provided the name of Fi.V.O., the relative resource whose suitability was litigated in the review hearing, at the “eleventh hour”; at the time that resource was identified, the children had been in foster care for almost two years. DHR conducted a home study, and, because of concerns that included the immigration status of Fi.V.0. and the resulting inability to perform a background check on him, DHR rejected that resource and decided to seek the termination of the parents’ parental rights. This court’s consideration of the mother’s challenge to the approval of the DHR’s plan to seek to terminate her parental rights has halted DHR’s ability to actually proceed with that plan in the juvenile court.[17] Thus, this court’s consideration of this appeal as having been taken from a final order will further delay permanency for the children. In Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990), our supreme court, in considering an action seeking the termination of parental rights, stated that a parent’s rights “deserve the law’s utmost protection against unwarranted interference” from the State. I agree that parental rights should be protected, but, in this case, the main opinion does so at the expense of the best interests of the children. In its recent discussion in Ex parte T.C., supra, in which it discouraged the practice of allowing interlocutory appeals in juvenile actions, our supreme court concluded that such appeals could be used by a parent as a dilatory tactic, which “would be counter to a [child’s] best interest.” Ex parte T.C., 96 So.3d at 129 (emphasis added).
*27 Also, the issues raised on appeal by the mother are relevant to the issues she could raise had her parental rights been terminated. I disagree with the main opinion’s assertion that the juvenile court’s rulings in the January 3, 2012, orders would constitute rulings that would preclude the juvenile court from considering, on the grounds of res judicata or collateral estoppel, the issues addressed in those nonfinal orders. A nonfinal order will not serve as a basis for those theories. See Lloyd Noland Found., Inc. v. HealthSouth Corp., 979 So.2d 784, 796 (Ala.2007) (one of the elements of collateral estoppel is that the litigation of the issue be necessary to the judgment)-, Davis v. Hanson Aggregates Southeast, Inc., 952 So.2d 330, 339 (Ala. 2006) (quoting Acevedo-Garcia v. Monroig, 351 F.3d 547, 560 (1st Cir.2003) (“ ‘[S]ince separate trials do not individually produce final judgments, any attempt to apply collateral estoppel to the remaining ... trials would be invalid under a Rule 42(b) regime.’ ”)); and Equity Res. Mgmt., Inc. v. Vinson, 723 So.2d 634, 636 (Ala. 1998) (one of the elements of res judicata is the existence of a final judgment on the merits).[18]
For the foregoing reasons, I must respectfully dissent.

. I now believe that E.E.R. v. Marion County Department of Human Resources, supra, involved a final judgment because the April 21, 2011, order from which the appeal was taken constituted an initial dependency determination, a basis that was not recognized in that opinion.

. The main opinion is correct in its assertion in footnote 4, 145 So.3d at 15-16, that the juvenile court “did not invoke § 12-15-312(c) or (e)” in reaching its January 3, 2012, orders. The discussion of those sections is necessary to explain my conclusion that D.P. v. Limestone County Department of Human Resources, supra, upon which the main opinion relies in this appeal, was incorrectly decided.

. I note that, in this case, although the January 3, 2012, orders relieve DHR of the obligation to continue to provide reunification services to the father, those orders do not state that DHR is relieved from making efforts to reunite the mother and the children. At the end of the review hearing, the juvenile court orally indicated an intention to relieve DHR of its duty to provide reunification services to the mother. However, the juvenile court ultimately did not include such a ruling in its January 3, 2012, review orders. The record on appeal does not indicate whether that omission was unintentional or whether, in the time between the hearing and the entry of the order, the juvenile court reconsidered that decision. Regardless, this court may not review an oral ruling that is not documented in a written order. See S.J.S. v. B.R., 949 So.2d 941, 944 (Ala.Civ.App.2006) (citing, among other authority, Rule 58, Ala. R. Civ. P.). As is noted in the main opinion and in this writing, in its February 10, 2011, orders, the juvenile court found that efforts to reunite the mother with the children had been unsuccessful, but it ordered that those efforts continue. In other orders, the juvenile court relieved DHR of the requirement that it provide services designed to reunite the father and the children. Thus, in its earlier orders in this matter, the juvenile court clearly expressed its ability to determine DHR's obligation to make reasonable efforts toward reunification. In the January 3, 2012, orders from which this appeal arises, the juvenile court did not relieve DHR of the obligation to use reasonable efforts to reunite the mother with the children. There is no need for this court to ascribe a ruling in the January 3, 2012, orders that the juvenile court, for whatever reason, failed to set forth.
I also disagree with that part of footnote 5 of the main opinion stating that a change in the permanency plan to termination of parental rights, without “expressly providing that DHR continue pursuing other permanency-plan options” means that DHR is no longer required to provide reunification services. 145 So.3d at 16-17 n. 5. The AJJA provides that a juvenile court may expressly relieve DHR of the requirement that it provide reunification services. There is no provision in the AJJA that requires a juvenile court to expressly order that those reunification services be continued upon a change in the permanency plan; thus, the main opinion creates a new *24 requirement that is not contained in the AJJA. I note that this court has reviewed actions involving a claim seeking to terminate parental rights that was filed in compliance with the 15-month requirement of § 12-15-317(1), Ala.Code 1975, and in which DHR social workers were not certain, at the time the petition was filed, that reunification was not likely. There are no doubt other situations in which reunification services could and should be continued past the time at which DHR files its petition to terminate parental rights.

. The father did not address the issue of the finality of the juvenile court's order in his *25 original brief submitted to this court in T.C. v. Mac.M., supra. On application for rehearing, the father "adopte[dJ in whole and incorporate[d] by reference” the dissent in T.C. v. Mac.M., supra.

. Section 12-15-601 provides, in its entirety:
“A party, including the state or any subdivision of the state, has the right to appeal a judgment or order from any juvenile court
proceeding pursuant to this chapter. The procedure for appealing these cases shall be pursuant to rules of procedure adopted by the Supreme Court of Alabama. All appeals from juvenile court proceedings pursuant to this chapter shall take precedence over all other business of the court to which the appeal is taken.”

. I note that appeals in juvenile cases have priority in this court and are addressed as expeditiously as possible. Although the length of time such an appeal is pending before this court is somewhat dependent on this court’s caseload and the level of debate between the judges concerning the outcome of the appeal, the completion of the record on appeal and briefing necessarily delays this court’s consideration of the appeal. Further, other delays often occur. Parties file motions pertaining to appellate issues or requests for stays, and court reporters seek extensions or additional time is needed to supplement the record on appeal; several such delays occurred in this case. Accordingly, although this juvenile matter was appealed in January 2012, it was not submitted to this court for a decision until late September 2012.

. I also question the application of the holding in New Properties, L.L.C. v. Stewart, 905 So.2d 797, 801-02 (Ala.2004), in a juvenile appeal. The Rules of Juvenile Procedure provide for the efficient consideration of juvenile actions. See, e.g., Rule 1(B), Ala. R. Juv. P. (providing shortened time periods for filing of pleadings and motions in the juvenile court). "It is clear from the former [Alabama Juvenile Justice Act], the 2008 [Alabama Juvenile Justice Act], and the Alabama Rules of Juvenile Procedure that, in resolving issues involving juveniles, time is of the essence.” Ex parte T.C., 96 So.3d at 129. Given the shortened time periods governing juvenile actions and the need for expeditious consideration of those actions, I do not think it wise to require juvenile-court judges to spend time making findings of fact to support every order that the main opinion has now deemed appealable, or requiring that review of those orders be delayed for a parent to file, and a juvenile court to consider, a postjudgment motion properly challenging the lack of factual findings in an order or judgment.