Leon C. Baker, a Florida resident, is the owner and sole shareholder of Leon C. Baker, P.C. ("the PC"), which is incorporated under the laws of New York for the purpose of engaging in the practice of law in that state. Baker and the PC appeal from an order permanently enjoining them from arbitrating a dispute with Merrill Lynch, Pierce, Fenner Smith, Inc. ("Merrill Lynch"), before the National Association of Securities Dealers, Inc. (the "NASD"). We affirm. Because the appeal involves the applicability of the doctrine of collateral estoppel, we must place this case within the context of the earlier related litigation.
This is the fifth time Baker has been before this Court in matters relating to the underlying dispute. See Baker v. Bennett, 603 So.2d 928
(Ala. 1992), cert. denied, 507 U.S. 912, 113 S Ct. 1260, 122 L.Ed.2d 658 *Page 160 
(1993), overruled, State Farm Fire Cas. Co. v. Owen, 729 So.2d 834
(1998) ("Alabama-Baker I"); Baker v. Bennett, 644 So.2d 901 (Ala. 1994) ("Alabama-Baker II"); Baker v. Bennett, 660 So.2d 980 (Ala. 1995) ("Alabama-Baker III"); and Baker v. Bennett (No. 1940172), 667 So.2d 743
(Ala. 1995) (table) (affirming without an opinion circuit court case no. CV-94-05629 on May 26, 1995) ("Alabama-Baker IV").
The substantive facts underlying this litigation are fully set forth inAlabama-Baker I and Alabama-Baker III. The dispute with Merrill Lynch is part of the appellants' long-running attempt to avoid the consequences of a $440,025 judgment against Baker in favor of J.R. Bennett and Laura Bennett affirmed in Alabama-Baker. Merrill Lynch's direct involvement in the dispute between Baker and the Bennetts began on August 8, 1994, when the Bennetts filed in the Jefferson Circuit Court an "Application for Temporary Restraining Order and Preliminary Injunction and Complaint for Specific Performance and for Discovery of Property" (cir. case no. CV-94-05629). The defendants named in that complaint included Baker and Merrill Lynch. The complaint alleged that "Baker own[ed] securities held by [Merrill Lynch] with fair market values sufficient to satisfy the Bennetts' judgment against Baker." It sought an order enjoining Baker from "concealing, transferring or otherwise attempting to insulate the securities from attachment for his debt," and enjoining Merrill Lynch from "transferring any securities of Baker."
As a consequence of that action, Merrill Lynch revealed the existence of brokerage account number 754-96534, which had been opened in the name of "Leon C. Baker, P.C.," ostensibly a corporate account of the PC, rather than as an individual account of Baker.[1] In compliance with a specific order of the trial court, Merrill Lynch opened an account in the name of the Bennetts' attorneys and transferred assets valued at $724,353.33 from account number 754-96534 to that account. That amount represented the amount of the Bennetts' judgment against Baker, plus accrued interest on that amount, plus $90,000 that had been assessed against Baker for civil contempt. The trial court ordered the transfer, because, it concluded, account number 754-96534 was, in reality, "a personal account of Baker's." Specifically, in an order dated October 25, 1994, the trial court stated:
 "Baker has asserted, in a letter to this court and in an affidavit, that such account is a `P.C.' account. Baker contends that the securities made subject to this court's orders . . . are actually owned by Leon C. Baker, P.C., a New York corporation, and not by Baker individually. However, there is absolutely no evidence in the record in this case that the account in question is anything other than a personal account. Baker has not been willing to appear and testify about this account and subject himself *Page 161 
to cross-examination even though the court ordered him to be present. . . . The only competent and admissible evidence before this court is the brokerage statement from such securities account which shows unequivocally that the account is titled in the name of Leon C. Baker, not Leon C. Baker, P.C. Such brokerage statement was produced by defendant Merrill Lynch and was offered into evidence by the plaintiffs and admitted without objection by any defendant. Moreover, the address on such account is Baker's residence address in Boca Raton, Florida, not New York. . . . Baker has now had three full and fair opportunities to present any competent and admissible evidence to contradict his personal ownership of such account, but he has failed to do so. Accordingly, this court's factual finding that Merrill Lynch Account [754-96534] is a personal account of Baker's is specifically reaffirmed."
Additionally, the trial court held that Merrill Lynch was "not liable to Leon C. Baker or Leon C. Baker, P.C. as a result of Merrill Lynch's transfer and liquidation of securities." The circuit court's judgment in case no. CV-94-05629 (Alabama-Baker IV) became final on January 13, 1995.
While some of these cases were pending in Alabama, Baker was litigating the same and related issues in Florida. See Baker v. Bennett, 633 So.2d 91
(Fla.Dist.Ct.App.), review denied, 641 So.2d 1344 (Fla.), cert. denied,513 U.S. 1018 (1994) ("Florida-Baker I"). Indeed, immediately after the Jefferson Circuit Court ordered the transfer of assets from account number 754-96534, the PC commenced an action styled Baker v. MerrillLynch, Pierce, Fenner Smith, Inc., [Ms. 94-8318-AO] (15th Jud. Cir. Fla. 1995) ("Florida-Baker II"). In that case, the PC alleged that Merrill Lynch had negligently allowed the Bennetts to discover the existence of account number 754-96534 and that that negligence had caused damage to the PC in the amount that the Jefferson Circuit Court had ordered transferred to the account set up in the name of the Bennetts' attorneys. The PC sought an order enjoining Merrill Lynch from transferring the assets, as it had been ordered to do by the Alabama trial court. It also sought compensatory damages.
On November 14, 1994, before a final judgment was entered inAlabama-Baker IV, Merrill Lynch moved the court in Florida-Baker II to compel arbitration. On December 20, 1994, the trial court granted that motion. Consequently, it stayed the judicial proceedings in Florida "until the resolution of the arbitration . . . [and] retain[ed] jurisdiction to confirm the arbitration award." On June 21, 1995, however, the court dismissed the action in Florida-Baker II, with prejudice.
Shortly after the dismissal of Baker's claims in Florida-Baker II, the PC commenced an action in the United States District Court for the Southern District of New York against the Bennetts and the Bennetts' lawyers, alleging abuse of process. That case was transferred to the United States District Court for the Northern District of Alabama. LeonC. Baker, P.C. v. Bennett, 942 F. Supp. 171 (S.D.N.Y. 1996). That court dismissed the PC's complaint.
In August 1999, the PC filed a complaint in arbitration against Merrill Lynch before the NASD. It sought compensation on theories of negligence and breach of fiduciary duty, arising out of Merrill Lynch's disclosure of the existence of account number 754-96534. More specifically, it alleged:
 "[T]he Bennetts' lawyers served discovery requests on the various brokerage *Page 162 
 firms including Merrill Lynch to determine whether they were in possession of any securities owned by Mr. Baker. When responding . . ., Merrill Lynch should have answered either (1) `No' or (2) `Only securities of Leon C. Baker and Gloria Baker as tenants by the entirety.' There the matter would have ended, because the Bakers are residents of Florida and under Florida law tenancy by the entirety property cannot be seized to satisfy an obligation of only one of the spouses.
 "Instead Merrill Lynch delivered an account statement of the Corporation, Leon C. Baker, P.C., but with the P.C. omitted. On its face, therefore, the account appeared to belong to Mr. Baker. Based on this evidence, the Bennetts' lawyers convinced [the circuit judge] that this account was Mr. Baker's personal account, and [he] ordered Merrill Lynch [to] liquidate the account and pay Bennetts' attorneys $72[4],353."
The complaint sought recovery of the $724,353, plus interest on that amount, and $500,000 in expenses.
On April 3, 2000, Merrill Lynch filed in the Jefferson Circuit Court a "Verified Complaint for Injunctive Relief," seeking to enjoin the "arbitration case brought by the PC . . . pending before the [NASD]." As the basis for injunctive relief, Merrill Lynch asserted the defense of collateral estoppel. It argued that the claims the PC made in the arbitration complaint were based on two issues that had been decided adversely to Baker in Alabama-Baker IV. Specifically, it alleged that the PC was estopped to assert (1) that account number 754-96534 was not Baker's individual account, and (2) that Merrill Lynch was liable to Baker or to the PC for liquidating the assets in the account pursuant to the order of the Jefferson Circuit Court. Baker and the PC moved to dismiss the complaint.
On May 23, 2000, the trial court denied the motion to dismiss the complaint, and entered an order permanently enjoining arbitration of the dispute. It held that both Baker and the PC were bound by the findings inAlabama-Baker IV, namely, that account number 754-96534 was Baker's individual account and that Merrill Lynch was not liable to Baker or the PC for liquidating the assets in the account. In other words, it held that the arbitration of the claims of Baker and the PC is barred by the doctrine of collateral estoppel. Subsequently, it denied Baker and the PC's motion to alter or amend its order, and Baker and the PC appealed.
Baker and the PC challenge the injunction on a number of grounds. They contend the trial court erred in holding that collateral estoppel barred the arbitration of claims against Merrill Lynch arising from its disclosure of account number 754-96534. Also, they contend that Merrill Lynch waived the right to object to arbitration.
 I. Application of the Doctrine of Collateral Estoppel A. Who Decides?
As a threshold matter, Baker and the PC contend that the question of the applicability of the doctrine of collateral estoppel is, itself,arbitrable. In other words, they contend that the trial court erred even in considering whether the doctrine of collateral estoppel was applicable. This determination, they insist, must be made by the arbitrators.
In Alabama, the doctrine of collateral estoppel will bar the relitigation of a previously resolved issue where (1) the issue and the parties in the second case are the same as the issue and the parties in the first case; (2) the issue was "actually *Page 163 
litigated in prior action"; and (3) the "resolution of the issue was necessary to the prior judgment." Wheeler v. First Alabama Bank ofBirmingham, 364 So.2d 1190, 1199 (Ala. 1978). The question of whodecides whether the arbitration of a previously litigated issue is collaterally estopped appears to be a matter of first impression in this Court.
The issue has been addressed in other jurisdictions, and those courts have reached divergent conclusions. For example, some courts have held that the preclusive effect of a prior judicial determination is to be decided by a court, rather than an arbitrator: John Hancock Mut. LifeIns. Co. v. Olick, 151 F.3d 132, 139 (3d Cir. 1998) (preclusive effect of prior judgments is a matter to be resolved by courts, not arbitrators); Inre Y A Group Sec. Litigation, 38 F.3d 380, 383 (8th Cir. 1994) ("The district court, and not the arbitration panel, is the best interpreter of its own judgment."); Kelly v. Merrill Lynch, Pierce, Fenner Smith,Inc., 985 F.2d 1067 (11th Cir.), cert. denied, 510 U.S. 1011 (1993); C O Dev. Co. v. American Arbitration Ass'n, 48 N.C. App. 548, 552,269 S.E.2d 685, 687 (1980) ("the extent of a judgment's binding effect is a matter for judicial determination").
Some cases hold that the preclusive effect of a prior arbitration
proceeding on claims asserted in a subsequent arbitration proceeding is to be decided by the court. Waterfront Marine Constr., Inc. v. North End49ers Sandbridge Bulkhead Groups A, B C, 251 Va. 417, 432,468 S.E.2d 894, 903 (1996) ("the court, not the arbitration panel, determines whether a previous arbitration award operates as res judicata
or collateral estoppel on a subsequent action or demand for arbitration"); Monmouth Pub. Sch., Dist. No. 38 v. Pullen,141 Ill. App.3d 60, 489 N.E.2d 1100, 1105, 95 Ill.Dec. 372 (1985);Rembrandt Indus., Inc. v. Hodges Int'l, Inc., 38 N.Y.2d 502,344 N.E.2d 383, 384, 381 N.Y.S.2d 451, 452 (1976) (res judicata effect of a prior arbitration is a matter for courts rather than for arbitrators).
Other courts have held that the preclusive effect of a prior arbitration proceeding on claims asserted in a subsequent arbitration proceeding is arbitrable. See Consolidation Coal Co. v. United MineWorkers of America, Dist. 12, Local Union 1545, 213 F.3d 404 (7th Cir. 2000); Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126 (9th Cir. 2000); Olick, supra, 151 F.3d at 139-40; National Union Fire Ins.Co. of Pittsburgh v. Belco Petroleum Corp., 88 F.3d 129 (2d Cir. 1996).
The appellants cite only one case holding that the preclusive effect of a judgment on claims subsequently asserted in arbitration "is itself arbitrable." United States Fire Ins. Co. v. National Gypsum Co.,101 F.3d 813, 816 (2d Cir. 1996), cert. denied, 521 U.S. 1120 (1997).
This case falls in the first category, i.e., those that involve the preclusive effect of a prior judicial determination on claims asserted in a subsequent arbitration proceeding. Clearly, courts in the first two groups cited above would agree that the issue in this case is to be decided by the judiciary. The principle stated in cases representative of the first group is that "even when arbitration is involved, . . . `[c]ourts should not have to stand by while parties re-assert claims that have already been resolved.'" In re Y A Group Sec. Litigation, 38 F.3d at 382 (quoting Kelly, 985 F.2d at 1069)). "No matter what, courts have the power to defend their judgments as res judicata, including the power to enjoin or stay subsequent *Page 164 
arbitrations." Id. (Emphasis added.)[2]
Courts in the third group have distinguished between cases like this one and those involving a prior arbitration. For example, the court inOlick, which involved both a prior judgment and a prior arbitration, explained:
 "While we have previously held that claims of res judicata based on a prior . . . judgment are an exception, see Telephone Workers Union of New Jersey v. New Jersey Bell Tel. [Co.], 584 F.2d [31], 31-32 (3d Cir. 1978), res judicata objections based on a prior arbitration do not implicate the institutional concerns underlying that holding. . . .
 "We have previously held . . . that where there is a contractual provision barring the re-arbitration of similar disputes between parties, the arbitrator is to decide the preclusionary effect, if any, of a previous arbitration. See Local 103 of the International Union of Elec., Radio, and Mach. Workers v. RCA Corp., 516 F.2d 1336, 1340 (3d Cir. 1975). The reasoning underlying this approach is that a provision regarding the finality of arbitration awards is a creature of contract and, like any other contractual provision that is the subject of dispute, it is within the province of arbitration unless it may be said `with positive assurance' that the parties sought to have the matter decided by a court."
151 F.3d at 139 (emphasis added).
We agree with the holdings of those courts in the first group, and with the rationales expressed by those in the second and third groups, insofar as they are applicable to a case involving the preclusive effect of a prior judgment.[3] Alabama has a strong interest in the finality of its courts' judgments. The courts of Alabama are not authorized to renderadvisory opinions, except in very limited circumstances. See, e.g.,Carrell v. Masonite Corp., 775 So.2d 121, 125 (Ala. 2000) ("Alabama's Declaratory Judgment Act bars trial courts from issuing advisory opinions"); Ala. Code 1975, § 12-2-10 (authorizing the Supreme Court to issue advisory opinions on "important constitutional questions" at the request of the Governor or the Legislature). Were we to adopt the position advocated by Baker and the PC, however, we would be establishing a procedure that would transform otherwise binding judicial decisions into mere "advisory opinions." Thus, Alabama has a strong policy against procedures such as the one advocated by the appellants.
We conclude that the trial court was the proper forum for Merrill Lynch to present its collateral-estoppel defense. We turn, therefore, to the substance of that defense. *Page 165 
 B. Identity of Issue and Parties
The appellants do not — indeed, cannot — seriously contend that the issues asserted in its action before the NASD are different from those involved in Alabama-Baker IV. In fact, at the heart of both cases is one dispositive factual issue. That issue is whether account number 754-96534 was a "personal account of Baker." If it was, it was subject to discovery, and Merrill Lynch could not be held liable for disclosing it.
That that issue was actually litigated in Alabama-Baker IV cannot be disputed. In its October 25, 1994, order, the trial judge declared: "The court specifically finds as a matter of fact that Baker's Merrill Lynch account [754-96534] is a personal account of Baker's." (Emphasis added.) Obviously, that finding was necessary to the judgment, because the action was commenced for the very purpose of discovering and preserving assets held for Baker by Merrill Lynch. Because this Court affirmed that judgment without an opinion, the correctness of the findings on which the judgment was based is not before us in this case.
Indeed, the only element about which there is a colorable controversy is the identity of the parties. Specifically, Baker and the PC contend that the doctrine of collateral estoppel does not bar the PC's claims before the NASD, because, they insist, the PC was not a party inAlabama-Baker IV. To be sure, the PC was not a named party in that case. Ordinarily, "[a] party to the second suit will not be estopped from relitigating an issue unless all of the requisite elements exist. It is noteworthy that Alabama has not followed the trend of abolishing the requirement that parties be identical, sometimes referred to as the mutuality of estoppel requirement." McMillian v. Johnson,878 F. Supp. 1473, 1520 (M.D.Ala. 1995), rev'd in part on other grounds,88 F.3d 1554 (11th Cir. 1996), cert. denied, 521 U.S. 1121 (1997). "Anexception is made to this requirement for parties in privity with a party to the prior action." Id. (emphasis added). Thus, regardless of the fact that the PC was not a named party in Alabama-Baker IV, it will be bound by that judgment if it was in privity with Baker.
"`The term "privity" has not been uniformly defined with respect to [collateral estoppel].'" Hughes v. Martin, 533 So.2d 188, 191 (Ala. 1988) (quoting Issue Preclusion in Alabama, 32 Ala. L. Rev. 500, 520-21 (1981)). Privity is often deemed, however, to arise from "`(1) the relationship of one who is privy in blood, estate, or law; (2) the mutual or successive relationship to the same rights of property; [or] (3) an identity of interest in the subject matter of litigation.'" Id. Thus, the existence of privity has generally been resolved "`on an ad hoc basis in which the circumstances determine whether a person should be bound by or entitled to the benefits of a judgment.'" Id. See also Dairyland Ins.Co. v. Jackson, 566 So.2d 723, 726 (Ala. 1990) (collecting cases).
"Generally, a corporation is in privity with its sole shareholder for collateral estoppel purposes. A ruling adverse to a controlling person of a corporation precludes the corporation from litigating that claim in a subsequent action." Jordache Enters., Inc. v. National Union Fire Ins.Co. of Pittsburgh, 204 W. Va. 465, 479 n. 16, 513 S.E.2d 692, 706 n. 16 (1998) (quoting 50 C.J.S. Judgment § 867, pp. 441-42 (1997) (emphasis added). See also Restatement (Second) of Judgments § 59(3)(b) (1982).
It is undisputed that Baker is the owner and sole shareholder of the PC. Moreover, in holding that the PC was collaterally *Page 166 
estopped from asserting claims in arbitration that depended for their efficacy on a finding contrary to the finding of the court inAlabama-Baker IV, the trial court expressly found the following:
 "Mr. Baker has been the PC's only president and is the only person with a financial interest in the PC; the PC has had no employees since 1987; for years, the PC has not actively engaged in the practice of law (in fact, for years it has done nothing on a daily basis); it has held no meetings; it has kept no corporate minutes; it has paid no salaries; its funds have been used for Mr. Baker's personal purposes; . . . and Mr. Baker himself gave testimony suggesting that he and his PC were one and the same."
(Emphasis added.) Indeed, those findings are also undisputed.
On these facts, we conclude that Baker and the PC are in privity, and, therefore, that the identity-of-parties element of collateral estoppel is also satisfied. Consequently, the trial court correctly held that the PC's claims in arbitration are barred by collateral estoppel.
 II. Waiver
Baker and the PC also contend that Merrill Lynch waived the right to object to arbitration. This is so, because, they insist, Merrill Lynch inFlorida-Baker II sought to compel arbitration. Baker and the PC argue that, instead of moving to compel arbitration in that court, Merrill Lynch should have raised then the defense of collateral estoppel it now asserts. Failure to do so, they insist, constituted a waiver of the right to assert it here. We disagree with this argument, as did the trial court.
To be sure, courts have held that the right to object to arbitration may be waived. This principle was stated in ConnTech Dev. Co. v.University of Conn. Educ. Properties, Inc., 102 F.3d 677, 685 (2d Cir. 1996):
 "Moreover, by waiting until September of 1993 to raise this argument before the district court, UCEPI [University of Connecticut Education Properties, Inc.] waived the right to object on the basis of ConnTech's alleged violation of a condition precedent. If UCEPI understood performance to be a condition precedent to arbitration, then UCEPI could have asserted this argument well before September of 1993, by which point the arbitration proceedings had long been underway. An objection to the arbitrability of a claim must be made on a timely basis, or it is waived. See, e.g., Fortune, Alsweet Eldridge, Inc. v. Daniel, 724 F.2d 1355, 1357 (9th Cir. 1983) (unjust to permit appellant to challenge arbitration, after voluntary participation for several months, shortly before arbitrator's decision); Owen-Williams v. Merrill Lynch, Pierce, Fenner Smith, Inc. 907 F. Supp. 134, 137 (D.Md. 1995) (plaintiff's willing submission of claims to arbitration without protest during 19 days of arbitration proceedings waived any right to contest arbitration of claims), aff'd, No. 96-1442, . . . (4th Cir. Dec. 2, 1996) (per curiam); International Longshoremen's Ass'n v. West Gulf Maritime Ass'n, 594 F. Supp. 670, 674 (S.D.N Y 1984) (`One who voluntarily participates in arbitration will not thereafter be heard to complain that the arbitrator was without authority to act.')."
Merrill Lynch's conduct in this dispute does not, however, run afoul of these principles. During the trial-court proceedings in Alabama-BakerIV, Merrill Lynch had no incentive to assert the arbitration clause. It had no arbitration agreement *Page 167 
with the Bennetts, and Baker had not asserted any cross-claims against it.
When, on November 14, 1994, Merrill Lynch moved the court inFlorida-Baker II to compel arbitration, it had no collateral-estoppel defense to the claims asserted by Baker and the PC. This is so because the judgment in Alabama-Baker IV did not become final, and thereby appealable, until January 13, 1995. Although the court in Florida-BakerII ordered arbitration of the dispute on December 20, 1994, as far as the record and briefs show, Baker and the PC took no action to commence arbitration proceedings until August 1999, when they filed their complaint before the NASD.
Indeed, on April 12, 1995, while Alabama-Baker IV was pending on appeal in this Court, the PC filed in Florida-Baker II its second amended complaint. The complaint contained three counts — two against the Bennetts and one against Merrill Lynch. The third count, the one against Merrill Lynch, was described as a count "For Enforcement of Arbitration Against Merrill." It stated in pertinent part:
 "34. Plaintiff's claims against Merrill are to be arbitrated before a panel of arbitrators of the National Association of Securities Dealers, Inc. pursuant to an order of this court dated December 20, 1994.
 "35. This court reserved jurisdiction to confirm the arbitration award and determine issues over which the arbitrators have no subject matter jurisdiction.
 "WHEREFORE, plaintiff demands no judgment on the Third Count pending the decision of the arbitrators."
(Emphasis added.)
Subsequently, the Bennetts moved the Florida court to dismiss the complaint. On June 21, 1995, that court entered an order styled: "Order Granting Defendants Bennetts' Motion to Dismiss Second Amended Complaint." The order stated in pertinent part:
 "THIS CAUSE came on to be heard upon the motion of defendants J.R. Bennett and Laura Bennett to dismiss the Second Amended Complaint and the court having heard argument of counsel, and being fully advised in the premises, it is hereby,
". . . .
 "ORDERED AND ADJUDGED, that the Second Amended Complaint is dismissed. The court finds that the claims of the plaintiff in this case, Leon C. Baker, P.C., are merely an attempt to relitigate the claims made by Leon C. Baker individually, in the case number CV-94-05629, J.R. Bennnett and Laura Jean Bennett v. Leon C. Baker, et al., Circuit Court in and for Jefferson County, Alabama, as affirmed by the Supreme Court of Alabama, case numbers 1940172, 1940207, 1940314, 1940371, and 1940643. The court further finds that Plaintiff's complaint, taken as true, asks this court to grant relief for the actions of Alabama courts and would effectively circumvent the orders of the Alabama courts on the same issues. Any challenge to the Alabama judgment and garnishment proceedings should be brought in Alabama."
(Emphasis added.) The parties disagree as to the legal effect of this order. Merrill Lynch construes it as dismissing the entire Florida action with prejudice. Baker and the PC, however, contend that the Florida court still retains "jurisdiction to confirm the arbitration award." We disagree with Baker and the PC.
"Rules applicable to the construction and interpretation of contracts are applicable to the construction and interpretation of judgments."Inter-Connect, Inc. v. Gross, 644 So.2d 867, 868 (Ala. *Page 168 
1994). More specifically, in Price v. Price, 360 So.2d 340 (Ala.Civ.App. 1978), the Court of Civil Appeals stated:
 "Judgments and decrees are to be construed like other written instruments. Wise v. Watson, 286 Ala. 22, 236 So.2d 681 (1970). If there is uncertainty and ambiguity in a contract or judgment, the court must construe it so as to express the intent of the parties or the trial judge. Reeder v. Reeder, Ala. Civ. App., 356 So.2d 202 (1978). Such intent can be derived from the provisions of the judgment. See Reeder v. Reeder; Sisco v. Empiregas, Inc., 286 Ala. 72, 237 So.2d 463
(1970)."
360 So.2d at 343 (emphasis added).
Nothing in the order of the Florida court suggests that the trial judge intended to retain jurisdiction for any purpose. On the contrary, the order clearly indicates the dismissal of the "Second Amended Complaint," and not merely the claims against the Bennetts. As we read it, the complaint was dismissed in toto. The dismissal carried with it count three, which was the count purporting to hold Merrill Lynch in the action. Any confusion about the meaning of the order should have been resolved in Florida before the time for taking an appeal expired. As we construe the order, there is no such action pending in that state.[4]
The trial court's holding as to whether a party has waived the right tocompel arbitration is ordinarily reviewed under the abuse-of-discretion standard. See Thompson v. Skipper Real Estate Co., 729 So.2d 287 (Ala. 1999); Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897,899 (Ala. 1995); Ex parte McKinney, 515 So.2d 693 (Ala. 1987). We will apply the same standard of review in a case, such as this one, involving a converse argument, namely, that a party has waived the right to resist
arbitration. Under the circumstances of this case, the trial court did not abuse its discretion in refusing to dismiss Merrill Lynch's complaint on the waiver ground.
 III. Forum Non Conveniens
Baker and the PC also contend that the trial court should have dismissed the complaint on the basis of Ala. Code 1975, § 6-5-430. We disagree with that contention. Section 6-5-430 provides, in pertinent part:
 "Whenever, either by common law or the statutes of another state or of the United States, a claim, either upon contract or in tort has arisen outside this state against any person or corporation, such claim may be enforceable in the courts of this state in any county in which jurisdiction of the defendant can be legally obtained in the same manner in which jurisdiction could have been obtained if the claim had arisen in this state; provided, however, the courts of this state shall apply the doctrine of forum non conveniens in determining whether to accept or decline to take jurisdiction of an action based upon such claim originating outside this state; and provided further that, if upon motion of any defendant it is shown that there exists a more appropriate forum outside this state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interests of justice, the court must dismiss the action without prejudice."
(Emphasis added.)
This section is inapplicable in this case. By its terms, it applies only to causes of *Page 169 
action arising "outside this state." The factual basis for Baker and the PC's claims is Merrill Lynch's allegedly negligent disclosure to theJefferson Circuit Court of the existence of account number 754-96534. AnAlabama court ordered Merrill Lynch to establish an account for the Bennetts's attorneys and to transfer the assets from account number 754-96534 to that account. It was Merrill Lynch's compliance with the Jefferson Circuit Court order that formed the basis for the claims asserted in Florida-Baker II and for the damages Baker and the PC now seek before the NASD.
It must also be remembered that the amount the PC seeks in arbitration is comprised of (1) the amount of the judgment originally rendered for the Bennetts in Alabama Baker-I; (2) $90,000 assessed by the Jefferson Circuit Court against Baker for civil contempt; (3) interest accrued on the Bennetts' judgment; plus (4) money expended by Baker in attorney fees and other expenses in an effort to avoid the Bennetts' Alabama judgment. In short, this is not a cause of action that "has arisen outside of this state." Because § 6-5-430 does not apply to this case, the trial court did not err in refusing to dismiss Merrill Lynch's complaint on forum non conveniens grounds.
 IV. Summary
In summary, we have considered all the arguments of Baker and the PC and find no reason to reverse the order of the trial court. That order is, therefore, affirmed.
AFFIRMED.
Moore, C.J., and Houston, Lyons, and Johnstone, JJ., concur.
[1] Account number 754-96534 was opened in 1990. The agreement opening the account contained an arbitration clause; that clause provides in pertinent part:
 "I agree that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be conducted only before the New York Stock Exchange, Inc., the American Stock Exchange, Inc., or [an] arbitration facility provided by any other exchange, the National Association of Securities Dealers, Inc., or the Municipal Securities Rulemaking Board."
[2] Because courts in the second group ascribe to the judiciary the authority to determine the preclusive effect of even a prior arbitration
award, then, a fortiori, they would hold that the court is to decide the effect of a prior judicial determination.
[3] Representative of the cases in the second group is Waterfront MarineConstr., in which the court reasoned:
 "[A]n arbitration panel is not generally bound by legal principles, does not have to explain or justify its decision, and the decision is not reviewed for legal errors. Rather, the arbitrators are entitled to make their decision based on what they deem to be just and equitable within the scope of the parties' agreement. . . . Consequently, when considering a plea of res judicata, an arbitration panel could determine that the issues resolved in a prior arbitration should be revisited, regardless of whether the legal elements required for sustaining the plea were met. Allowing a plea of res judicata to be resolved by arbitration defeats the purpose of the judicially created doctrine — to bring an end to the substantive controversy and to protect the parties from re-litigating previously decided matters."
468 S.E.2d at 903.
[4] Furthermore, the record is devoid of evidence that Merrill Lynch participated in arbitration proceedings as a result of the appellants' complaint before the NASD, other than to file an answer, in which it also asserted its collateral-estoppel defense.