[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 878 
William D. Thompson appeals from a summary judgment that the Madison Circuit Court entered in favor of SouthTrust Bank ("SouthTrust"), R. Larry Turner, and Terri Nicholson. We affirm.
 I. Facts and Procedural History
In April 2002, Thompson entered into a contract with Tifton's Corner, Inc., whereby Thompson obtained an option to purchase from Tifton's Corner, Inc., the Villa Madrid Apartments ("the apartments") for $1,600,000.[1] In exchange for the option, Thompson was required to pay $5,000 to Tifton's Corner, Inc., each month until the option expired in December 2002.
In August 2002, Thompson entered into a contract to sell the apartments to Randy Campbell for $1,900,000. The contract was contingent on Campbell's obtaining a loan for that amount, and on Campbell's providing proof to Thompson by September 5, 2002, that a loan in that amount for the purchase of the apartments had been approved by a lender.
Campbell applied to SouthTrust for a loan for the purchase price of the apartments. As part of the application process, Campbell provided a copy of the apartment-purchase contract to Terri Nicholson, an employee of SouthTrust. On August 15, 2002, Nicholson provided to Campbell a letter addressed "to whom it may concern," in which she stated that Campbell had requested a loan from SouthTrust and that it was SouthTrust's "intention to provide funding in support of the contract, subject to further property data review including appraisals and full underwriting analysis." At some point in August 2002, during an inspection of the apartments, Nicholson stated to Thompson's real-estate agent, Patsy Rentz, that the contract to purchase the apartments was "a done deal" and that "[w]e don't know what the appraisal will be, but Mr. Campbell has sufficient other collateral if the appraisal is not enough, and he will put additional collateral up to buy this property."
On September 4, 2002, Nicholson sent a letter to Campbell indicating that South-Trust would loan him up to 80% of the appraised value of the apartments. On September 5, 2002, Campbell contacted Nicholson, asking for a letter indicating that SouthTrust had approved a loan to him for the purchase of the apartments. On that same day, Nicholson prepared and forwarded to Thompson a letter that stated: "Please be advised that SouthTrust Bank has "approved a loan to Randy Campbell for the purchase of Villa Madrid Apartments, located at 3902 Cobb Road, Huntsville, AL."
On September 18, 2002, in an addendum to the purchase contract, Campbell received an extension on the closing date from September 19, 2002, to September 30, 2002. The addendum indicated that SouthTrust had approved a loan to Campbell. *Page 879 
At some point, David Frederick, Campbell's real-estate agent, learned that Thompson had an option contract to purchase the apartments for only $1,600,000. He contacted Rentz and told her that Campbell would not pay $1,900,000 for the apartments, given the lower amount for which Thompson was purchasing the apartments. Frederick indicated that, by not consummating the transaction, with Thompson, Campbell stood to lose only the $10,000 earnest money he had provided under the contract and that he could purchase the apartments directly from Tifton's Corner, Inc., once Thompson's option contract expired. Frederick stated that "[i]f Mr. Thompson wants to be so greedy, he might wind up with zippo."
On September 26, 2002, an appraisal on the apartments was completed; it indicated that they had a value of $1,970,000. Campbell testified that because South-Trust had agreed to loan him only 80% of the appraised value of the apartments, he did not have sufficient financing to complete the transaction. On the same day, Campbell sought to amend the contract to reflect a new purchase price of $1,820,000 and a closing date of October 7, 2002. Thompson rejected this amendment. Campbell, did not purchase the apartments. Thereafter, Thompson's option contract on the apartments expired without Thompson having exercised the option to purchase the apartments.
In 2002, Thompson sued SouthTrust, Campbell, and various fictitiously named persons and entities — but not Turner or Nicholson — in the Madison Circuit Court ("the 2002 lawsuit"). The 2002 lawsuit asserted claims of fraud, negligence, wantonness, and conspiracy against South-Trust in connection with the failed transaction involving the apartments. SouthTrust moved the trial court to enter a summary judgment in its favor on all of Thompson's claims against it. On October 7, 2004, the trial court granted SouthTrust's motion and entered a summary judgment in its favor.
After the trial court certified the summary judgment in favor of SouthTrust in the 2002 lawsuit as a final judgment pursuant to Rule 54(b), Ala. R. Civ.App., Thompson appealed that judgment to the Supreme Court, which, in turn, transferred the appeal to this court pursuant to § 12-2-7, Ala. Code 1975. This court affirmed the summary judgment in SouthTrust's favor without a published opinion on September 9, 2005. See Thompson v.South-Trust Bank, [Ms. 2040509, Sept. 9, 2005] 954 So.2d 5
(Ala.Civ.App. 2005) (table) (consolidated with Thompson v.Campbell [Ms. 2040508, Sept. 9, 2005] 954 So.2d 5
(Ala.Civ.App. 2005) (table)').[2]
On September 7, 2004, while his claims were still pending against SouthTrust in the 2002 lawsuit, Thompson filed a separate lawsuit in the Madison Circuit Court against SouthTrust, Turner, and Nicholson *Page 880 
relating to the same failed transaction involving the apartments ("the 2004 lawsuit"). Thompson asserted claims of negligence, wantonness, fraud, and fraud in the inducement against all three defendants. He also asserted a claim of negligent and/or wanton supervision and training against Turner, who was Nicholson's supervisor, and against SouthTrust. Thompson alleged that SouthTrust was vicariously liable for the conduct of its employees.
On May 24, 2005, SouthTrust, Turner, and Nicholson filed a motion for a summary judgment in their favor. South-Trust contended that Thompson's action against it was barred by the affirmative defenses of collateral estoppel and res judicata; Turner and Nicholson contended that Thompson's action against them was barred by the affirmative defense of res judicata. The trial court granted a summary judgment in favor of all three defendants on July 15, 2005. Thompson appealed to the Supreme Court, which transferred the appeal to this court pursuant to Ala. Code 1975, § 12-2-7(6).
 II. Standard of Review
A motion for a summary judgment calls into question whether there are genuine issues of material fact and, if not, whether one or more of the parties are entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P. We review de novo the entry of a summary judgment, applying the same standard the trial court applied. "The party moving for summary judgment bears `"the burden of production, i.e., the burden of making a prima facie showing that he is entitled to summary judgment."' Ex parteGeneral Motors Corp., 769 So.2d 903, 909 (Ala. 1999) (quotingBerner v. Caldwell, 543 So.2d 686, 691 (Ala. 1989) (Houston, J., concurring specially))." Stewart v.Brinley, 902 So.2d 1, 8 (Ala. 2004). If the party moving for a summary judgment bears the burden of proof at trial on the matter for which a summary judgment is sought, the movant bears the burden at the summary-judgment stage and must provide substantial evidence in support of the motion. Id.
"Otherwise, the burden of production does not shift to the nonmovant, and the movant cannot prevail on the motion."Id.
 III. Discussion
Thompson contends that the trial court erred when it entered a summary judgment in the defendants' favor on their affirmative defenses of res judicata and collateral estoppel because, he argues, they failed to prove several of the elements of each of those defenses. As set forth below, we conclude that the summary judgment in favor of all three defendants is due to be affirmed.
 A. The Summary Judgment in SouthTrust's Favor
SouthTrust was a defendant in Thompson's 2002 lawsuit, which, like the present action, arose from the failed transaction involving the apartments. The trial court entered a summary judgment in South-Trust's favor in the 2002 lawsuit, and we affirmed that judgment.
The elements of res judicata are "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." Equity Res. Mgmt,Inc. v. Vinson, 723 So.2d 634, 636 (Ala. 1998). On appeal, the only element of res judicata Thompson argues is not satisfied as to SouthTrust in this case is the fourth element. He asserts that his present cause of action is different than the cause of action that was at issue in the 2002 lawsuit. Specifically, he argues that the claims he asserted against SouthTrust in the 2002 lawsuit did not include one for *Page 881 
negligent and/or wanton supervision or training by SouthTrust.
In Old Republic Insurance Co. v. Lanier, 790 So.2d 922
(Ala. 2000), our Supreme Court discussed the same-cause-of-action element of res judicata:
 "In Alabama `[i]t is well-settled that "the principal test for comparing causes of action [for the application of res judicata ] is whether the primary right and duty or wrong are the same in each action."' Wesch v. Folsom, 6 F.3d 1465, 1471
(11th Cir.1993) (emphasis added), cert. denied sub nom. Sinkfield v. Wesch, 510 U.S. 1046, 114 S.Ct. 6%, 126 L.Ed.2d 663 (1994). `Res judicata applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts.' Id. (emphasis added). `The question is whether the same evidence substantially supports both actions. . . . It is considered the same cause of action when the same evidence is applicable in both actions.' Hughes v. Martin, 533 So.2d 188, 191
(Ala. 1988). As it is sometimes stated, `"[w]here two successive suits seek recovery for the same injury, a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit."' Silcox v. United Trucking Serv., Inc., 687 F.2d 848, 852
(6th Cir.1982); Harrington v. Vandalia-Butler Bd. of Educ., 649 F.2d 434, 437(6th Cir.1981). . . ."
790 So.2d at 928-29 (some emphasis added).
In Equity Resources Management, Inc., supra, the Supreme Court held that a previous lawsuit the plaintiff had filed in federal court barred her subsequent lawsuit in state court. In the previous lawsuit, the plaintiff had sued her employer and several of her coworkers alleging age discrimination in the termination of her employment in violation of the federal Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. Equity Resources Mgmt, 723 So.2d at 635-36. After the federal court dismissed the employee's claims against her coworkers, the plaintiff obtained a favorable verdict against her employer. Id. at 636. She filed a subsequent suit against the same employer and the same coworkers in state court, asserting, inter alia, negligence or wantonness in the hiring, training, retention, and supervision of her supervisor.Id. The defendants filed a motion for a summary judgment on the ground of res judicata. The trial court denied that motion. Id. at 635. The Supreme Court granted permission under Rule 5, Ala. R.App. P., for the defendants to appeal the denial of their summary-judgment motion. Id.
On appeal, the issue presented to the Supreme Court was whether the fourth element of res judicata was present. The Supreme Court reversed the order of the trial court, holding that the previous lawsuit involved the same cause of action as the subsequent lawsuit. Id. at 636. The Supreme Court held that, in spite of the fact that the plaintiff asserted different claims in each of the lawsuits, the cause of action in each was the same.Id. at 639. The Court stated:
 "After carefully examining the allegations contained in Vinson's federal — and state-court complaints, and after reviewing the federal district court's `Order on Pretrial Hearing,' we conclude that Vinson's state-law claims are barred. The basic issues in the federal action centered around whether the defendants, and specifically Carol Bohn, had intentionally discriminated against Vinson by terminating her employment solely on the basis of her age. Vinson specifically alleged in the federal action that the *Page 882 
defendants had made material misrepresentations to her concerning her job security and that she had relied on those misrepresentations to her detriment, by giving up an opportunity for other employment. Vinson made these same allegations in her state action. She also alleged in her state action that the defendants had breached a contract by terminating her employment for a reason other than the grounds set out in the company's `Policies and Procedures Manual' and that the defendants had negligently or wantonly hired or failed to train or supervise `staff who act responsibly, and in accordance with the law, toward their employees.' Vinson's federal age-discrimination claim and her state-law claims, including her rather vague state constitutional claims, all arose out of the same acts, and her state claims logically would be subject to proof by the very same evidence that supported her federal age-discrimination claim. Although Vinson's state-law action was instituted on legal theories of recovery different from those pursued in the federal action, those theories, in light of the substantial overlap of factual issues and evidence, do not constitute different causes of action for res judicata purposes. Vinson did not request that the district court exercise pendent jurisdiction over her state-law claims, and it is not clear from the record that the district court would have declined such a request. . . . Therefore, the federal judgment bars her state action under the doctrine of res judicata."
723 So.2d at 639.
In the present case, the primary wrong alleged in the present lawsuit and the wrong alleged in the 2002 lawsuit are the same. Both lawsuits arise from SouthTrust's representations to Thompson regarding the anticipated loan to Campbell for the purchase of the apartments from Thompson. Although Thompson did not specifically allege in the 2002 lawsuit that SouthTrust's liability had resulted from its alleged failure to properly supervise or train its employees, the fact remains that SouthTrust, as a corporate entity, could and did act only through its employees. See Read News Agency, Inc. v. Moman,383 So.2d 840, 843 (Ala.Civ.App. 1980). The "legal theory and claims" that Thompson asserts against SouthTrust in this action "arise out of the same nucleus of operative facts" that gave rise to the legal theories he asserted against SouthTrust in the 2002 lawsuit. The same evidence supporting the 2002 lawsuit with regard to SouthTrust substantially supports the present action. The cause of action as to SouthTrust in the present action is the same cause of action Thompson prosecuted against SouthTrust in the 2002 lawsuit, notwithstanding the inclusion of additional "legal theories and claims." Thus the summary judgment with regard to South-Trust is due to be affirmed.[3]
 B. The Summary Judgment in Turner and Nicholson's Favor
Thompson also argues that the trial court erred when it entered a summary judgment in Turner and Nicholson's favor on the basis of res judicata. As with SouthTrust, Thompson argues that the present lawsuit arises from a different cause of action than the 2002 lawsuit. We already have explained our disagreement with this assertion. Thompson also argues, *Page 883 
however, that Turner and Nicholson cannot satisfy the third element of res judicata, i.e., the requirement of "substantial identity" between the parties in the previous lawsuit and the present lawsuit.
Our Supreme Court has discussed the substantial-identity element of res judicata:
 "Axiomatically, res judicata . . . operate[s] only between parties (and their respective privies) who or which have already opposed each other in at least one claim that has been litigated to a judgment. If neither a party nor any of that party's privies has litigated at least one claim to a judgment against another party nor any of the other party's privies, [res judicata cannot] bar either of those parties or any of that party's privies from suing the other party or any of the other's privies. See Lee L. Saad Constr. Co. v. DPF Architects, P.C., 851 So.2d 507, 520 (Ala. 2002), Leon C. Baker, P.C. v. Merrill Lynch, Pierce, Fenner Smith, 821 So.2d 158, 165 (Ala. 2001), Equity Res. Mgmt, Inc. v. Vinson, 723 So.2d 634
(Ala. 1998), and Hughes v. . Martin, 533 So.2d 188 (Ala. 1988).
 ". . . .
 "`Ordinarily, "[a] party to the second suit will not be [barred by res judicata . . . ] from relitigating an issue unless all of the requisite elements exist. It is noteworthy that Alabama has not followed the trend of abolishing the requirement that parties be identical, sometimes referred to as the mutuality of estoppel requirement." McMillian v. Johnson, 878 F.Supp. 1473, 1520 (M.D.Ala.1995), rev'd in part on other grounds, 88 F.3d 1554
(11th Cir.1996), cert. denied, 521 U.S. 1121
. . . (1997). "An exception is made to this requirement for parties in privity with a party to the prior action." Id. (emphasis added).'"
Stewart v. Brinley, 902 So.2d 1, 9-11 (Ala. 2004) (quoting Leon C. Baker, P.C. v. Merrill Lynch, Pierce,Fenner Smith, 821 So.2d 158, 165 (Ala. 2001)). In the present case, it is undisputed that Thompson did not name Turner and Nicholson in the 2002 lawsuit. Thus, for the doctrine of res judicata to bar Thompson's present action against them, Turner and Nicholson must be in privity with at least one of the prevailing defendants in the 2002 lawsuit.
 "`"The term "privity" has not been uniformly defined with respect to [res judicata . . .].'" Hughes v. Martin, 533 So.2d 188, 191 (Ala. 1988) (quoting Issue Preclusion in Alabama, 32 Ala. L.Rev. 500, 520-21 (1981)). Privity is often deemed, however, to arise from "`(1) the relationship of one who is privy in blood, estate, or law; (2) the mutual or successive relationship to the same rights of property; [or] (3) an identity of interest in the subject matter of litigation.'" Id. Thus, the existence of privity has generally been resolved "`on an ad hoc basis in which the circumstances determine whether a person should be bound by or entitled to the benefits of a judgment.'" Id. See also Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 726 (Ala. 1990) (collecting cases).'
 "Leon C. Baker, P.C, 821 So.2d at 165."
902 So.2d at 10-11 (emphasis added).
Turner and Nicholson's status as employees of SouthTrust is undisputed. This fact, coupled with the basis on which SouthTrust obtained a summary judgment in the previous lawsuit, allows Turner and Nicholson to take advantage of the previous adjudication in favor of SouthTrust. *Page 884 
In Hughes v. Martin, 533 So.2d 188 (AIa.1988), our Supreme Court examined the substantial-identity requirement of res judicata in the context of joint tortfeasors. In that case, the parents of Henry Hughes were killed when their vehicle collided with a tractor-trailer owned by Southern Haulers, Inc. Hughes, as the executor of his parents' estate, retained an attorney, Myron Allenstein, and filed a wrongful-death action against Southern Haulers, eventually obtaining a jury verdict in the amount of $10,000. Hughes appealed, arguing, among other things, that the damages awarded were insufficient. This court affirmed.
Hughes, utilizing Allenstein, filed a second wrongful-death action, this time against the driver of the tractor-trailer. Allenstein associated a second attorney, Ludger Martin, to assist him in the case. Before the case went to trial, Hughes, following the advice of the two attorneys, settled the case for $25,000.
After the second case was settled, Hughes sued Allenstein, alleging legal malpractice in connection with the first lawsuit. The trial of this malpractice action resulted in a judgment in Allenstein's favor, which was affirmed on appeal. Hughes then brought a second legal-malpractice action, this one against both Allenstein and Martin in connection with the lawsuit against the driver of the tractor-trailer. Allenstein obtained a summary judgment in this second legal-malpractice action, which was affirmed on appeal. Martin also obtained a summary judgment, from which Hughes appealed.
In the appeal of the summary judgment in Martin's favor, the Supreme Court considered whether the doctrine of res judicata barred the action against Martin and justified the summary judgment in his favor. Addressing the substantial-identity-of-the-parties element, the Court stated:
 "[T]he facts unequivocally show that Allenstein associated Martin in the case; therefore, we conclude that there was sufficient privity between Allenstein and Martin for the principle of res judicata to apply. Upon review of the record, it is clear that Hughes sued both Martin and Allenstein as joint tort-feasors in the malpractice case based on the [lawsuit against the driver of the tractor trailer], choosing not to claim, if he could, that Martin's alleged negligence was different from Allenstein's. Because Hughes sued Allenstein and Martin as joint tort-feasors, we hold that privity existed between Allenstein and Martin and that the `substantial identity of the parties' prong of the res judicata test is met.
 "As stated earlier, before a prior judgment will bar a subsequent action, the parties, or those in privity with them, must be the same in the two lawsuits.
 "`The term "privity" has not been uniformly defined with respect to res judicata. The following three definitions have appeared in Alabama cases: (1) the relationship of one who is privy in blood, estate, or law; (2) the mutual or successive relationship to the same rights of property; and (3) an identity of interest in the subject matter of litigation. Largely defining privity by example, the Alabama cases seem to resolve the question on an ad hoc basis in which the circumstances determine whether a person should be bound by or entitled to the benefits of a judgment. The decision usually turns on whether the relationship between the parties was close enough and whether adequate notice of the action was received by the alleged privy; this test has been bolstered by the recent tendency of the Alabama *Page 885 
courts' to analyze privity as an identity of interests.'
 "`Issue preclusion in Alabama,' 32 Ala. L.Rev. 500, 520-21 (1981).
 "Appellee contends, and we agree, that `if [the plaintiffs claim against Allenstein related to the lawsuit against the driver] is barred by application of the doctrine of res judicata, then the claim against co-defendant Martin is likewise barred by the doctrine of res judicata; first, under claim preclusion, and secondly, that not only was there substantial identity of parties between Hughes and Allenstein, but also substantial identity between Allenstein and Martin.'"
Hughes, 533 So.2d at 190-91. The Supreme Court concluded that, in addition to the substantial-identity-of-the-parties element, all of the other elements of res judicata were met, and, as a result, the Court affirmed the summary judgment in Martin's favor.
Although Hughes involved claims against joint tortfeasors, we conclude that its reasoning applies with equal force to a case such as that before us, so as to bar a plaintiff from prosecuting a lawsuit against an employee when the same plaintiff already has suffered an adverse judgment on the merits in an action against the employer for the acts of the employee, provided that the prior judgment for the employer was not based on grounds personal to the employer. Applying the doctrine of res judicata in this circumstance is consistent with the. policy underpinning that doctrine. As the Hughes court explained:
 "Res judicata is a broad, judicially developed doctrine, which rests upon the ground that public policy, and the interest of the litigants alike, mandate that there be an end to litigation; that those who have contested an issue shall be bound by the ruling of the court; and that issues once tried shall be considered forever settled between those same parties and their privies. 46 Am.Jur.2d Res Judicata § 395 (1969). `The principle of res judicata fosters reliance on judicial action, and tends to eliminate vexation and expense to the parties, wasted use of judicial machinery and the possibility of inconsistent results.' `Developments in the Law — Res Judicata,' 65 Harv. L.Rev. 820 (1952)."
Hughes, 533 So.2d at 190.
The application of res judicata to the employer-employee relationship involved in the present case is in accord with the general rule applied in other jurisdictions. As one well-known treatise explains:
 "[W]here suit is brought against an employer for the alleged wrong of an employee, it is generally held that a judgment on the merits for the employer may bar an action against the employee, particularly where it is conceded or undisputed in the first action that the employee was acting within the scope of his or her employment."
47 Am.Jur.2d Judgments § 614 (2006) (footnotes omitted). See generally Restatement (Second) ofJudgments § 51(1)(a) (1982).[4]
In Emery v. Fowler, 39 Me. 326 (1855), the defendant was tried and found liable *Page 886 
for trespass. On appeal, the appellate court noted that there was evidence, excluded by the trial court, indicating that the defendant was the servant of his father, and, for purposes relevant to the lawsuit, had acted at the direction of his father. The court also noted that there was evidence that the defendant's father had already been tried and found not liable for the same acts that had given rise to the lawsuit against his son. Reversing the judgment against the son and remanding the case for a new trial, the appellate court held that the excluded evidence, if believed by the jury, would constitute a bar to the action against the defendant:
 "This case requires that a single point only should be considered; whether one who acts as the servant of another, in doing an act alleged to have been a trespass, is to be considered as so connected with his principal, who commanded the act to be done, that what will operate as a bar to the further prosecution of the principal, will operate as such for his servant. . . . In such case the principal and servant would be one in interest and would be known to the plaintiff to be so. To permit a person to commence an action against the principal and to prove the acts alleged to be trespasses, to have been committed by his servant acting by his order, and to fail upon the merits to recover, and subsequently to commence an action against that servant and to prove and rely upon the same acts as a trespass, is to allow him to have two trials for the same cause of action, to be proved by the same testimony. In such cases the technical rule, that a judgment can only be admitted between the parties to the record or their privies, expands so far as to admit it, when the same question has been decided and judgment rendered between parties responsible for the acts of others. A familiar example is presented in suits against a sheriff or his deputy, which being determined upon the merits, against or in favor of one, will be conclusive upon the other.
 ". . . .
 "If upon the testimony the jury should have been satisfied, that the same acts of alleged trespass had been directly put in issue, and that a decision upon them had been made in the former suit on trial of the merits, that decision exhibited by the record of the judgment, should have been held to be conclusive."
Emery, 39 Me. at 329-32.
Similarly, in Giedrewicz v. Donovan, 277 Mass. 563,179 N.E. 246 (1932), an employee argued that a previous verdict in favor of his employer in an action brought by the plaintiff constituted a bar to the current suit. After a demurrer to the employee's res judicata defense was sustained, an appeal was taken. The appellate court, reversing the judgment of the trial court, stated:
 "As a matter of public policy and in the interest of accomplishing justice, the better rule would seem to be that, if it is clearly established, in the trial of an action either against the employee or against the principal for damages caused by the employee's negligent conduct, that the employee is not negligent, the judgment in the case first tried is a bar to a subsequent action by the same plaintiff for the same negligent act of the same employee. In principle it would seem to be immaterial whether the first judgment was obtained in an action against the employer provided the only ground for holding the employer is the negligence of the employee and it clearly appears that in the first trial the employee was found to be free from culpability." *Page 887 
Giedrewicz, 277 Mass. at 569, 179 N.E. at 248.
Likewise, the federal common law of res judicata provides an identity-of-parties rule that is in accord with the general rule set forth above. As the United States Circuit Court of Appeals for the Fifth Circuit stated in Lubrizol Corp. v. ExxonCorp., 871 F.2d 1279 (5th Cir.1989):
 "Most other federal circuits have concluded that employer-employee or principal-agent relationships may ground a claim preclusion defense, regardless which party to the relationship was first sued. See Fiumara v. Fireman's Fund Ins. Co., 746 F.2d 87, 92
(1st Cir.1984); Lambert v. Conrad, 536 F.2d 1183, 1186 (7th Cir.1976); Lober v. Moore, 417 F.2d 714 (D.C. Cir.1969); Spector v. El Ranco, Inc., 263 F.2d 143, 145 (9th Cir.1959). But see Morgan v. City of Rawlins, 792 F.2d 975, 980 (10th Cir.1986). The doctrinal basis for these decisions has varied according to their fidelity to traditional mutuality or privity concepts, but they share a common practical thread. Where a plaintiff has sued parties in serial litigation over the same transaction; where plaintiff chose the original forum and had the opportunity to raise all its claims relating to the disputed transaction in the first action; where there was a `special relationship' between the defendants in each action, if not complete identity of parties; and where although the prior action was concluded, the plaintiffs later suit continued to seek essentially similar relief — the courts have denied the plaintiff a second bite at the apple. See, e.g., Gambocz v. Yelen[cs]ics, 468 F.2d 837 (3rd Cir.1972); Cahill v. Arthur Andersen Co., 659 F.Supp. 1115, 1119-23 (S.D.N.Y.1986), aff'd, 822 F.2d 14 (2nd Cir.1987); Ruskay v. Jensen, 342 F.Supp. 264 (S.D.N.Y.1972) (noting that the plaintiffs `were fully aware of the role played by the present defendants who were not parties to the earlier proceeding' when they settled their claims), aff'd, 552 F.2d 392 (2nd Cir.1977), cert. denied, 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197
(1977); McLaughlin v. Bradlee, 599 F.Supp. 839, 848 (D.D.C.1984), aff'd 803 F.2d 1197 (1986); County of Cook v. MidCon Corp., 574 F.Supp. 902
(N.D.Ill.1983), aff'd, 773 F.2d 892 (7th Cir.1985); Spector v. El Ranco, Inc., 263 F.2d 143, 145 (9th Cir.1959).
Lubrizol Corp., 871 F.2d at 1288-89.
Courts in other states also have applied this general rule.See, e.g., Michelson v. Exxon Research Eng'g Co.,629 F.Supp. 418, 423 (W.D.Pa.1986) (applying Pennsylvania law and citing Restatement (Second) of Judgments § 51 (1982) for the proposition that any judgment involving an employee for actions committed within the line and scope of employment "would apply with the same effect to the employer, and vice versa");Saavedra v. Orange County Consol. Transportation Agency,11 Cal. App.4th 824, 14 Cal.Rptr.2d 282, 285-86 (4th Dist.1992);Atlantic Cylinder Corp. v. Hetner, 438 So.2d 922, 923
(Fla.Dist.Ct.App. 1983); McNeal v. Paine, Webber, Jackson Curtis. Inc., 249 Ga. 662, 663-64, 293 S.E.2d 331,332-33 (1982) (holding claim against employee barred by former adjudication in favor of employer and reasoning: "To allow this case to proceed against [the employee] would create a framework under which a plaintiff could consciously design a legal strategy which would allow him two shots at the same target. In gaming and sports there may be such a thing as the best two out of three, but not even those circles recognize the best one out of two.");DeLeon v. Slear, 328 Md. 569, 587-88, 616 A.2d 380, 389
(1992); Berwald v. Ratliff, 782 S.W.2d 709, 710-11
(Mo.Ct.App. 1989); Massoth v. Staples, 481 P.2d 141, 144
(Okla. 1971). *Page 888 
A situation analogous to the present one was presented to our Supreme Court in the case of Griffin v. Bozeman,234 Ala. 136, 173 So. 857 (1937). In Griffin, the defendants, who had cut timber on certain land under the authority of Bolinger, were sued by an individual claiming to own that land. The defendants sought to have the case dismissed on the basis that a previous action by the plaintiff against Bolinger based on the same claims had resulted in a verdict in Bolinger's favor. The defendants argued that they were entitled to the benefit of Bolinger's judgment because they had acted under Bolinger's authority and claim to the land in cutting the timber.
The trial court denied the defendants' motion to dismiss, and the defendants appealed to the Supreme Court. The Supreme Court held that the basis for the previous adjudication must be considered in determining whether the defendants could claim the previous adjudication as a bar to the action against them:
 "If in a suit between [the individual claiming the land] and Bolinger the question is directly presented, and it is adjudged in substance and effect that the latter did own the land and timber at the time of the cutting, such cutting should not be held to be a trespass, though not done by Bolinger, but by defendants whose rights were dependent upon and in privity with those of Bolinger. In order for the judgment in favor of Bolinger to exonerate these defendants, it must be made to appear that the judgment for him was based on the ground that there was no such trespass committed on [the] land [claimed by the individual suing the defendants], because it was there held by the court and jury that the land was not that of [the individual], but of Bolinger; or that he was then in the adverse possession of it, rather than that the verdict was on some personal defense, as that Bolinger did not participate in the trespass."
Griffin, 234 Ala. at 139, 173 So. at 859-60 (emphasis added). The verdict from the previous action against Bolinger was general, and it was therefore unknown whether the previous adjudication in favor of Bolinger was based on a defense that was personal to him or on a general defense to the action. Because the specific basis of the previous verdict was thus unknown, the defendants were unable to demonstrate on the appeal in their case that they were entitled to claim the previous adjudication in favor of Bolinger as a bar to the action against them, and, as a result, the Supreme Court did not overturn the trial court's refusal to dismiss the case on that basis. Id.
Unlike Griffin, we are, in the present case, able to determine the basis of the trial court's judgment in SouthTrust's favor in the 2002 lawsuit. We have reviewed the record from the previous lawsuit and note that none of the grounds SouthTrust asserted in support of its motion for a summary judgment were grounds that were personal to it, as opposed to the employees through whom it would have acted in committing the alleged torts. Instead, it appears that the summary judgment was entered in SouthTrust's favor based on Thompson's failure to establish a genuine issue of material fact that South-Trust, acting through its employees, committed the torts alleged. Thus, the considerations that counseled against allowing the defendants inGriffin to claim the benefit of the previous judgment in favor of their principal are not present in this case.
Because the adjudication in the previous lawsuit in SouthTrust's favor was based not on defenses that were personal to SouthTrust, but upon defenses that were applicable to the employees, Turner and Nicholson, through whom SouthTrust acted, *Page 889 
Turner and Nicholson are in privity with SouthTrust with regard to that adjudication. As a result, the trial court did not err when it entered a summary judgment in Turner and Nicholson's favor on the basis of their affirmative defense of res judicata.[5]
 IV. Conclusion
Based on the foregoing, we affirm the trial court's judgment in favor of South-Trust, Turner, and Nicholson.
AFFIRMED.
CRAWLEY, P.J., and THOMPSON, J., concur.
PITTMAN and BRYAN, JJ., concur in the result, without writing.
[1] The facts set forth herein are gleaned from the record, which we have considered in the light most favorable to Thompson, the party against whom SouthTrust, Turner, and Nicholson sought the summary judgment at issue in this appeal. See Hurst v.Alabama Power Co., 675 So.2d 397, 398 (Ala. 1996).
[2] The record before the trial court did not include the record from the 2002 lawsuit. South/Trust, Turner and Nicholson brought to the trial court's attention, however, the fact that the pleadings and judgment of the trial court from the 2002 lawsuit were "on file with this [c]ourt." We may assume that, when the trial court in the present case considered the defenses of res judicata and collateral estoppel, it took judicial notice of the record in the 2002 lawsuit. Thompson did not challenge the defendants' request that the trial court refer to the record from the 2002 lawsuit; nor has he challenged that request in his briefs to this court.
Furthermore, as noted, the judgment in the 2002 lawsuit was affirmed by this court in Thompson v. SouthTrust Bank, [Ms. 2040509, Sept. 9, 2005] 954 So.2d 5 (Ala.Civ.App. 2005) (table). This court can and does take judicial notice of the record from the 2002 lawsuit for purposes of addressing the res judicata issue presented here.
[3] Because we hold that the trial court properly entered a summary judgment in South-Trust's favor on its affirmative defense of res judicata, we do not reach the question of the propriety of the summary judgment in South-Trust's favor on its affirmative defense of collateral estoppel.
[4] Restatement of Judgments § 51(1)(a) (1982) states:
 "A judgment against [an] injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct unless . . . [t]he claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action. . ."
[5] The trial court's summary judgment in favor of Turner and Nicholson was based solely on the ground of res judicata. No issues were presented to the trial court, and none have been presented to this court on appeal, as to whether claims of the nature asserted here against a bank's employees by a prospective borrower are cognizable under Alabama law.